**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| **ROSE PALMER, as ADMINISTRATRIX OF THE ESTATE OF EVERETT PALMER, JR., DECEASED** | : | |
| | : | |
| | : | |
| | : | |
| | : | |
|             **Plaintiff,** | : | |
| **v.** | : | |
| | : | |
| **YORK COUNTY, PENNSYLVANIA** | : | **Civil Action No. _____** |
| | : | |
| **AND** | : | |
| | : | |
| **YORK COUNTY PRISON BOARD** | : | **JURY TRIAL DEMANDED** |
| | : | |
| **AND** | : | |
| | : | |
| **JOHN DOE PRISON GUARDS 1-10** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **JOHN DOE PRIME CARE EMPLOYEES 1-5** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **PRIME CARE MEDICAL, INC.** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **JOHN DOE CORPORATIONS 1-5** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **DR. RAMEEN STARLING-RONEY** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **FORENSIC PATHOLOGY ASSOCIATES** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **CORONER PAM GAY** | : | |
| | : | |
| **AND** | : | |
| | : | |
| **DISTRICT ATTORNEY DAVID SUNDAY** | : | |

1

|                                              |   |
| -------------------------------------------- | - |
| **AND**                                      | : |
|                                              | : |
| **SOLICITOR MICHELLE POKRIFKA**              | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **DEPUTY SOLICITOR DONALD REIHART**          | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **WARDEN CLAIR DOLL**                        | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **PRESIDENT JUDGE JOSEPH ADAMS**             | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **COMMISSIONER JULIE WHEELER**               | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **COMMISSIONER DOUG HOKE**                   | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **COMMISSIONER RON SMITH**                   | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **CONTROLLER GREG BOWERS**                   | : |
|                                              | : |
| **AND**                                      | : |
|                                              | : |
| **SHERIFF RICHARD KEUERLEBER**               | : |
|                                              | : |
|                                              | : |
|                             **Defendants.**  | : |

## CIVIL ACTION COMPLAINT

**NOW COMES** Rose Palmer as duly appointed administrator of the Estate of Everett Palmer, Jr., deceased, by and through chosen counsel Daniel Purtell, Esquire and John J. Coyle,

Esquire of McEldrew Young Purtell and S. Lee Merritt of Merritt Law Office, complaining of the conduct of the named defendants, and in support thereof states the following:

## NATURE OF THE ACTION

1. On April 7, 2018, Everett Palmer Jr. travelled from his residence in Delaware to York County, Pennsylvania to resolve an open warrant related to an old DUI charge. The personal trainer and U.S. Army veteran arrived in York County sober, healthy and in good spirits. Mr. Palmer was booked and taken to York County Jail where he was placed in a one-man jail cell. Two days later, Everett Palmer Jr. was dead. His body was covered in bruises. His blood was filled with methamphetamine.

## PARTIES

2. Plaintiff, Rose Palmer, is an adult individual, the mother of Everett Palmer, Jr., and the administratrix of his Estate.

3. Plaintiff, Rose Palmer, has been designated as Administratrix of the Estate of Everett Palmer, Jr., deceased, by the remaining parent and natural guardian of Everett Palmer's two surviving minor children, M.E.B. and M.D.B.

4. Defendants John Doe Prison Guards 1-10 is and/or were at all times acting under color of state law in the scope and course of their duties as prison guards with the York County Prison. Defendants John Doe Prison Guards 1-10 are being sued in their individual capacity.

5. Defendant York County is a county organized pursuant to the laws of the Commonwealth of Pennsylvania. York County owns and operated the York County Prison, and along with Defendant York County Prison Board and Defendant Warden Clair Doll is responsible for the implementation of the prison's budget, personnel, staffing, training,

policies, procedures, practices, and customs. York County may be served at the Office of the York County Administrator, 28 E. Market Street, York, PA 17401.

6.  Defendant York County Prison Board operated York County Prison on behalf of York County pursuant to state law. York County Prison Board may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.

7.  Defendant John Doe Prime Care Employees 1-5 are employees of Prime Care who provide medical services within York County Prison.

8.  Prime Care Medical, Inc. is a corporation with its principle place of business located at 3940 Locust Lane Harrisburg, PA 17109.

9.  Defendant John Doe Corporations 1-5 are corporations engaged in the manufacture of spit hoods, tasers, and/or yet to be identified restraint devices supplied to and used within York County Prison.

10. Defendant Pam Gay is the Coroner for York County. She may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.

11. Defendant David Sunday is the District Attorney for York County. He may be served at 45 North George Street York, PA 17401. He is also a member of the York County Prison Board which is responsible for the operation of the York County Prison.

12. Defendant Dr. Rameen Starling-Roney is a pathologist employed by Defendant Forensic Pathology Associates. He may be served wherever he may be found.

13. Defendant Forensic Pathology Associates is a corporation with its principle place of business located at 1255 South Cedar Crest Blvd. Suite 3800, Allentown, PA 18103.

14. Defendant Michelle Pokrifka is the Solicitor for York County. She may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401. She is

also a member of the York County Prison Board which is responsible for the operation of the York County Prison.

15.    Defendant Donald Reihardt is the Deputy Solicitor for York County.  He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.

16.    Defendant Claire Doll is the Warden of the York County Prison.  He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.

17.    Defendant Joseph Adams is the President Judge of the York County Court of Common Pleas.  He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.  He is also a member of the York County Prison Board which is responsible for the operation of York County Prison.

18.    Defendant Julie Wheeler is a Commissioner of York County.  She may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.  She is also a member of the York County Prison Board which is responsible for the operation of the York County Prison.

19.    Defendant Doug Hoke is a Commissioner of York County.  He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.  He is also a member of the York County Prison Board which is responsible for the operation of York County Prison.

20.    Defendant Ron Smith is a Commissioner of York County.  He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.  He is also a member of the York County Prison Board which is responsible for the operation of York County Prison.

21.    Defendant Greg Bowers is the Controller of York County. He may be served at the Office of the York County Administrator, 28 E. Market Street York, PA 17401.  He is also a

member of the York County Prison Board which is responsible for the operation of York County Prison.

22.    Defendant Richard Keuerleber is the former Sheriff of York County.  He may be served at the Office of the Sheriff of York County 45 N. George Street York, PA 17401.   He is also a member of the York County Prison Board which is responsible for the operation of York County Prison.

## JURISDICTION AND VENUE

23.    Jurisdiction and Venue are proper in this Honorable Court as Defendants' constitutional violations, intentional torts, and otherwise violative conduct occurred in York County, Pennsylvania.

## FACTS RELATED TO
## THE UNLAWFUL KILLING OF EVERETT PALMER, JR.

24.    Everett Palmer Jr. was a 41-year-old father of two.

25.    The former U.S. Army paratrooper was in good healthand worked as a personal trainer in Seaford, Delaware.

26.    On April 7, 2018, Everett traveled to York County, Pennsylvania to voluntarily address an old warrant for a DUI charge.

27.    Everett had recently become aware of the charge and wanted to resolve it while on his way to New York to visit his family.

28.    Everett drove himself to York County.

29.    Upon arrival, Everett was sober, mentally healthy, and in good spirits.

30.    He was taken into custody and brought before Magisterial District Judge Scott J. Gross at approximately 8:25PM.

31.     Despite no other criminal record and this being Everett's first offense, Judge Gross ordered Mr. Palmer held on $5,000 bail.

32. Because he did not have enough money on his person to pay the bail, Everett Palmer was remanded to the custody of the York County Prison.

33. Palmer was isolated in a cell by himself without direct contact with other inmates.

34. Two days later, on April 9, 2018, the otherwise healthy Palmer, died in custody.

35. His death was ruled a homicide.

36. His blood contained an extremely high level of methamphetamine and amphetamine in his system.

37. Specifically, at the time of the blood draw following his death, Everett had blood toxicology levels of 625 ng/mL of methamphetamine and 130 ng/mL of amphetamine. There was no alcohol in Everett's system.

38. Based upon the level of methamphetamine in Everett's blood at death, the half-life of methamphetamine, and the time Everett was in custody, it is impossible for Everett to have consumed the methamphetamine prior to turning himself in to York County Authorities.

39. Once in custody, Everett was held in isolation and only had contact with prison staff.

40. An autopsy report produced by the County noted that Palmer had significant bruising and lacerations all over his body, including:

   • Two puncture defects on the right forearm

   • 3" x 1.25" contusion on the right hand

   • 6.25" x. 5" contusion on the right forearm, elbow, and arm

   • 5" x 4" contusion with abrasions on the left elbow, forearm, and arm

   • 6" x 2.5" contusion on the right lower leg

   • 4" x .75" abrasion on the left lower leg

   • 1" abrasion on the frontal scalp

- 1.25" abrasion on the mid-parietal scalp

- Two 1.25" – 1.5" abrasions on the left temporal scalp

- .5" abrasion on the right side of the upper chest

- .25" x .125" abrasion of the left torso

- .1875" x .125" abrasion of the left hip

- Hemorrhage/blood extravasation along the soft tissue in both elbows

41. Despite numerous requests, Plaintiff has not been provided the available photographs in support of the above described injuries.

42. The autopsy report further notes that York County correctional officers used physical force on Mr. Palmer, including at least two TASER deployments and a restraint chair.

43. Once Mr. Palmer was placed in the restraint chair, he was taken to prison medical where he was found to be unresponsive.

44. Upon information and belief, John Doe Prison guards 1-10 drugged Everett Palmer, Jr with methamphetamine and amphetamine while he was in custody.

45. Upon information and belief, John Doe Prison guards 1-10 were deliberately indifferent to the fact that Everett was in immediate need of medical assistance as a result of their dosing of him and the obvious mental and physical ailments relating therefrom.

46. Upon information and belief, John Doe Prison guards 1-10 entered Everett's cell and physically beat Everett, tased him, choked him, and applied a spit hood for no legitimate purpose.

47. Upon information and belief, John Doe Prison 1-10 guards failed to obtain emergency medical care for Everett in a necessary and timely manner.

48. Upon information and belief John Doe Prime Care employees 1-5 failed to provide emergency medical care to Everett in necessary and timely manner.

49.    Upon information and belief, the unreasonable and unlawful application of force and the deliberate indifference to Everett Palmer's medical needs led to his death.

## FACTS RELATING TO THE COVER-UP OF THE UNLAWFUL KILLING OF EVERETT PALMER, JR.

50.    Upon information and belief, shortly after the death of Everett Palmer, Jr., York County Commissioners Julie Wheeler, Doug Hoke, and Ron Smith conspired with District Attorney Sunday, Solicitor Pokrifka, Deputy Solicitor Reihart, Warden Doll, and Dr. Starling-Roney to cover-up the murder of Everett Palmer by York County Prison Guards John Doe 1-10 and intentionally prevented and/or delayed the release of any information related to Mr. Palmer's death until after the statute of limitations period had passed.

51.    Plaintiff's requests for, *inter alia*,  intake records, mental health documentation, medical documentation, isolation monitoring documentation, physical evidence, investigation materials, photos, incident reports, witness statements, surveillance video, cell extraction video, policies and procedures, and information regarding guards and prisoners assigned to the same block as Mr. Palmer were refused by York County, York County District Attorney Sunday and York County Prison Warden Claire Doll.

52.    An autopsy was performed on Everett by Dr. Rameen Starling-Roney of the York County Coroner's Office.

53.    In furtherance of the conspiracy, and contrary to the National Association of Medical Examiners position paper on Deaths in Custody, Dr. Starling-Roney refused to conclude Everett's death was a homicide and instead ruled the cause of death as "undetermined."

54. However, the findings detailed in the autopsy included microscopic changes consistent with hypoxic ischemia and lead to the unambiguous medical conclusion that Everett died from asphyxiation.

55. This asphyxiation was likely caused by physical abuse, restraint or the application of a spit-hood.

56. Following the autopsy, Everett's body was released to his family so that a private second autopsy could be performed.

57. At that time, Everett's heart, brain, throat and hyoid bone had been removed from his body and were not produced to the family.

58. While the autopsy report prepared by Dr. Starling-Roney indicates that the brain and heart were retained for further examination, the report makes no note of the removal or retention of Everett's throat and hyoid bone.

59. In fact, the report makes no mention of any injuries to the throat to warrant additional examination.

60. When asked about the location of the throat, the York County Coroner originally indicated it had been turned over to the funeral home for family.

61. That remained the Coroner's official position for nearly two weeks until the Office changed course and claimed that the throat had been retained along with the other organs and sent to a private laboratory where it was being held.

62. Requests to retrieve the organs for DNA testing and pathological evaluation have been refused.

63. Multiple requests were made to District Attorney David Sunday to view *inter alia* the physical evidence, surveillance video, investigative file and witness statements.

64.    These requests were made via email and during an in-person meeting with the Palmer family.

65.    District Attorney Sunday has refused any and all requests for information relating to Mr. Palmer's death.

66.    District Attorney Sunday has claimed that the only information related to this incident which may be disclosed is "that grand jury proceedings are ongoing [sic] and the matter continues to be under investigation."

67.    Despite repeated follow-ups to the District Attorney, no additional information has been provided despite more than 23 months having passed since Mr. Palmer's death.

68.    Additionally, Right to Know Requests were served upon York County by counsel for the Plaintiff.

69.    York County, at the discretion of the York County Commissioners and through the recommendations and actions of Solicitor Michelle Pokrifka and Deputy County Solicitor Donald Reihart refused to produce the requested documents.

70.    Specifically, on June 13, 2019, counsel for Plaintiff served Requests on York County and York County Prison.

71.    In concert with York County's established conspiracy to cover-up and obfuscate the details surrounding Everett Palmer, Jr.'s death, on June 14, 2019 Deputy Solicitor Reihart embarked on a strategy to delay any possible disclosure of relevant materials until after the statute of limitations ran on claims arising from Mr. Palmer's death.

72.    On June 14, 2019, Deputy Solicitor Reihart invoked an additional thirty days to respond to the Requests.

73.    On July 18, 2019, Deputy Solicitor Reihart issued a letter refusing to produce documents responsive to Plaintiff's Right to Know Request.

74.    Counsel for Plaintiff appealed this refusal to a Pennsylvania Office of Open Records.  On October 7, 2019, Pennsylvania Open Records Officer Kelly Isenberg concluded that the appeal was granted and required the County to produce the requested information within thirty days.

75.    Deputy Solicitor Reihart, acting in furtherance of the conspiracy, appealed the hearing officer's decision to the York County Court of Common Pleas.

76.    In support of York County's appeal and request for *de novo* review, Deputy Solicitor Reihart met with Warden Doll and secured an affidavit that falsely claimed that the disclosure of any materials requested by Plaintiff's counsel would be a threat to the safety and security of the prison.

77.    Following oral argument, on January 28, 2019, Court of Common Pleas Judge Richard K. Renn denied in large part the County's Petition for De Novo Review and ordered production of the requested documents.

78.    Judge Renn went further in his order, accusing the County of "sandbagging" the Open Records process.

79.    Continuing the conspiracy, the County through Deputy Solicitor Reihart again refused to produce the requested materials and on February 12, 2020 appealed Judge Renn's Order to the Commonwealth Court.

80.    The Defendants' individual and collective efforts to prevent Plaintiff's access to any requested information can only be seen as an intentional and concerted effort to prejudice Plaintiff's ability to investigate and/or plead the present matter within the controlling statute of limitations.

## WRONGFUL DEATH ACTION

81.    Plaintiff, Rose Palmer, as appointed by the parent and natural guardian of the minor children of Everett Palmer, Jr., hereby brings Wrongful Death claims pursuant to 42 Pa.C.S. §8301 (the Pennsylvania Wrongful Death Statute) and Pa.R.C.P. 2202(a), on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Everett Palmer, Jr.

82.    The names and address of all persons legally entitled to recover due to the wrongful death of Everett Palmer is Mychele Boykin, as guardian and p/n/g of M.E.B. and M.D.B.

83.    No other action has been brought to recover for Mr. Palmer's death under the aforementioned statute(s).

84.    Plaintiff claims all available damages under the Pennsylvania Wrongful Death Statute for financial contributions and the loss of future services, support, society, comfort, affection, guidance, tutelage, and contribution that the Plaintiff's decedent, Everett Palmer, Jr., would have rendered to the wrongful death beneficiaries but for his traumatic, untimely and unnatural death.

85.    Plaintiff claims damages for payment for all medical bills and/or expenses.

86.    Plaintiff claims damages for payment of funeral and burial expenses.

## SURVIVAL ACTION

87.    Plaintiff also brings a Survival Action under the Pennsylvania Survival Statute, 42 Pa.C.S. § 8302, and pursuant to 20 Pa.C.S. § 3373, for all damages recoverable under the Statute, including but not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to death, and for emotional distress suffered by Plaintiff's decedent, Everett Palmer, Jr., from the initiation of the assault upon him until the ultimate time of his death.

## COUNT I: VIOLATION OF THE FOURTEENTH AMENDMENT – EXCESSIVE FORCE ON A PRETRIAL DETAINEE
*Plaintiff v. John Doe Prison Guards 1-10*

88.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

89.    John Doe Prison Guards 1-10 drugged Everett Palmer, Jr., drugged him, beat him, choked him, tased him,  restrained him and failed to obtain necessary and timely medical care all contributing to and causing his untimely and unnatural death.

90.    The actions of John Doe Prison Guards 1-10 were intentional, objectively unreasonable and were not rationally related to any legitimate non-punitive governmental purpose.

91.    As a result of the actions of John Doe Prison Guards 1-10, Everett Palmer suffered mental anguish, extreme pain,agony and ultimately death.

92.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: ASSAULT AND BATTERY
*Plaintiff v. John Doe Prison Guards 1-10*

93.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

14

94.     John Doe Prison Guards 1-10 drugged Everett Palmer, Jr., drugged him, beat him, choked him, tased him, restrained him  and failed to obtain necessary and timely medical care all contributing to and causing his untimely and unnatural death.

95.     The actions of John Doe Prison Guards 1-10 were intentional, objectively unreasonable and constituted willful misconduct, a crime, and actual malice.

96.     As a result of the actions of John Doe Prison Guards 1-10, Everett Palmer suffered mental anguish, extreme pain,agony and ultimately death.

97.     Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to state law, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, and any other remedies legally appropriate.


**COUNT III: VIOLATION OF THE FOURTEENTH AMENDMENT – DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED**
*Plaintiff v. John Doe Prison Guards 1-10, John Doe Prime Care Employees 1-5, and Prime Care Medical, Inc.*

98.     The preceding paragraphs are incorporated by reference as though laid out fully herein.

99.     Following the drugging of Everett Palmer, it was obvious to any individual who encountered him that he was in need of immediate medical treatment.

100.    John Doe Prison Guards 1-10 observed Everett in a drugged, mentally unstable and/or disoriented state and took no actions to afford him medical care.

101.  John Doe Prime Care Employees 1-5 observed Everett in his cell in a drugged, mentally unstable and/or disoriented state and took no actions to afford him medical care.

102.  Once Everett Palmer was removed from his cell John DOe Prison Guards 1-10 and John Doe Prime Care Employees 1-5 failed to obtain and/or provide necessary emergency care required due to Everett Palmers physical injuries.

103.  As a result of the actions of John Doe Prison Guards 1-10 and John Doe Prime Care Employees 1-5, Everett Palmer suffered mental anguish, extreme pain and agony and ultimately died.

104.  Defendant Prime Care is sued in this Count under a *respondeat superior* theory of liability as John Doe Prime Care Employees were acting within the scope of their employment when they refused to provide Everett Palmer with necessary medical care.

105.  Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### COUNT IV: VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS – DENIAL OF ACCESS TO COURTS AND OF THE RIGHT TO BE HEARD IN AN IMPARTIAL FORUM

*Plaintiff v. Dr. Rameen Starling-Roney, Coroner Pam Gay, Warden Claire Doll, Commissioners Julie Wheeler, Doug Hoke, and Ron Smith, District Attorney David Sunday, Solicitor Michelle Pokrifka, and Deputy Solicitor Donald Reihart, and Forensic Pathology Associates*

106.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

107.    Defendants named in this Count each took actions designed to cover-up the death of Everett Palmer and prevent Plaintiff from gaining any information relating to the incident.

108.    As a result of the conduct of the Defendants, Plaintiff was prohibited from learning the identity of any of Everett's assailants or any facts upon which to develop her claims.

109.    Defendant Forensic Pathology Associates is sued in this Count under a *respondeat superior* theory of liability as Dr. Rameen Starling-Roney was acting within the scope of his employment at all times relevant to this action.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### COUNT V: CONSPIRACY TO VIOLATE OF THE FIRST AND FOURTEENTH AMENDMENTS – DENIAL OF ACCESS TO COURTS AND OF THE RIGHT TO BE HEARD IN AN IMPARTIAL FORUM

*Plaintiff v. Dr. Rameen Starling-Roney, Coroner Pam Gay, Warden Claire Doll, Commissioners Julie Wheeler, Doug Hoke, and Ron Smith, District Attorney David Sunday, Solicitor Michelle Pokrifka, and Deputy Solicitor Donald Reihart, and Forensic Pathology Associates*

110.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

111.    Defendants named in this Count conspired to cover-up the death of Everett Palmer and to prevent information relating to his death from becoming public.

112.    In furtherance of the conspiracy, each took actions designed to cover-up the death of Everett Palmer and prevent Plaintiff from gaining any information relating to the incident.

113.    As a result of the conduct of the Defendants, Plaintiff was prohibited from learning the identity of any of Everett's assailants or any facts upon which to develop her claims.

114.    Defendant Forensic Pathology Associates is sued in this Count under a *respondeat superior* theory of liability as Dr. Rameen Starling-Roney was acting within the scope of his employment at all times relevant to this action.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

### COUNT VI: PRODUCT LIABILITY
*Plaintiff v. John Doe Corporations 1-5*

115.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

116.    John Doe Corporations 1-5 are the manufacturers of spit hoods, tasers, and restraint devices used in York County Prison.

117.    John Doe Corporations 105 market their spit hoods, tasers, and restraint devices as safe tools for corrections officers to use while restraining detainees.

118.    John Doe Corporations 1-5 were aware of asphyxiation risk and cardiac issues associated with the use of their spit hoods as a result of prior custodial deaths involving their spit hoods.

119.    Nonetheless, John Doe Corporations 1-5 continued to market and sell their products despite being aware of the known risks of custodial deaths.

120.    Upon information and belief, a spit hood, taser, and restraint device produced by John Doe Corporations 1-5 were used during the assault of Everett Palmer.

121.    As a result of the assault and defects with the spit hood, taser, and restraint devices produced by John Doe Corporations 1-5, Everett Palmer asphyxiated and died.

122.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to state law, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, and any other remedies legally appropriate.


### COUNT VII: MUNICIPAL LIABILITY
*Plaintiff v. York County, York County Prison Board, David Sunday, Michelle Pokrifka, Joseph Adams, Julie Wheeler, Doug Hoke, Ron Smith, Greg Bowers, and Richard Keuerleber*

123.    The preceding paragraphs are incorporated by reference as though laid out fully herein.

### Lack of Policies and Training

124.    Among the Right-to-Know requests Plaintiff's counsel submitted to York County were requests for prison policies relating to the use of force by corrections officers, policies governing screening and treatment of mental health issues, and policies relating to confrontations with mentally unstable individuals.

125.    York County did not produce any policies in response to this request.

126.    Therefore, upon information and belief, York County and the York County Prison Board do not maintain any formal policies governing the use of force by corrections officers, policies governing screening and treatment of mental health issues, or policies relating to confrontations with mentally unstable individuals.

127.    Specifically, York County and the York County Prison Board have no policies or training relating to:

     i.   Observation and treatment of individuals in isolation;

     ii.   Observation and treatment of individuals exhibiting mental illness;

     iii.   Observation and treatment of individuals placed on suicide watch;

     iv.   Proper use of force;

     v.   Cell extractions;

     vi.   The use of tasers;

     vii.   The use of restraints;

     viii.   The use of spit hoods;

     ix.   The use of choke holds;

     x.   Identifying and dealing with mentally unstable individuals and/or those placed on suicide watch;

     xi.   Identifying and dealing with drugged or intoxicated individuals;

     xii.   Providing medical care to mentally unstable individuals;

     xiii.   Providing medical care to drugged or intoxicated individuals;

     xiv.   Providing medical care to acutely injured individuals

128.    Upon information and belief, York County does not train its prison guards on proper strategies, techniques, their legal responsibilities, or the limits of their legal authority as

it relates to the use of force by corrections officers, screening and treatment of mental health issues, confrontations with mentally unstable individuals or obtaining and/or providing acute critical medical care.

129.　As a result of the lack of policies and training by York County, York County prison guards are woefully unequipped to handle these situations and are ignorant of the limits of their lawful authority.

130.　York County's lack of policies and training were a moving force behind the deprivation of Everett Palmer's constitutional rights.

### Custom of Excessive Force and Inmate Abuse

131.　The unchecked use of violence and excessive force against inmates at York County is widespread.

132.　In 2013, York County Prison Guards Graff, Whitcomb, and Haynes organized what they called the "Retard Olympics."

133.　The prison guards would force inmates to "do stupid stuff for food and coffee."

134.　 The guards forced one inmate to drink a gallon of milk in an hour, eat a spoonful of cinnamon, and drink water with pepper foam in it among other degrading tasks.

135.　Being unsatisfied with sophomoric pranks, the guards would force inmates to wrest them or subject them to physical violence.

136.　Guards Graff and Whitcomb beat one inmate about his arms and legs until they went numb.

137.　Prison guard Whitcomb once bribed an inmate with food to permit him to choke out the inmate.

138.　Additionally, the guards arranged a "fight club" in which they would force inmates to fight each other in a storage closet while the guards watched.

139.  In 2016, prison guards viciously assaulted two ICE detainees following a dispute regarding the number of blankets the detainees were allowed to have.

140.  A captain sprayed the detainees with mace while a member of the prison Certified Emergency Response Team (CERT team) physically beat the other detainee in an effort to punish the two detainees.

141.  The beating resulted in one detainee suffering broken dentures from being slammed on a table, as well as knee and elbow injuries.

142.  More than four days passed before he was seen for medical care.

143.  When a grievance was filed, the York County Warden covered up the vicious assault by defending the CERT team for utilizing a "new technique" on the detainee.

144.  In May of 2017, prison guards Cessna, Velasquez, Fitski, and others engaged in a savage beating of inmate Aaron Ornstein.

145.  The guards became annoyed with how slowly Ornstein was moving and kicked his legs causing him to fall.

146.  Once he fell, the guards began kneeing, punching and kicking Ornstein while he was on the ground.

147.  As a result of the beating, Ornstein required stitches to his eye.

148.  Additionally, he suffered a broken clavicle which caused his right lung to fill with 3.5 liters of blood resulting in difficulty breathing.

149.  A complaint filed by Ornstein was ignored by Warden Doll, and Ornstein was punished for the incident.

150.  Inmate abuse at the York County Prison was not limited to physical violence.

151.  There has existed a long history of York County Prison Guards trafficking illegal drugs into the prison.

152.  Warden Doll and the York County Prison Board either actively encourage the behavior by overlooking the trafficking or are completely incompetent to stop the known illicit conduct.

153.  During 2018, York County Prison Guard Amanda Anderson was actively trafficking heroin and contraband within York County Prison.

154.  Anderson was arrested in June of 2018, however this did nothing to slow the trafficking of drugs by prison guards in York County.

155.  On January 23, 2020, an inmate at York County Prison was treated for an overdose.

156.  York County and Warden Doll attempted to cast aside suspicion of prison guards trafficking drugs and claimed that the inmate had smuggled the drugs in himself, however at the time of the overdose the inmate had been in custody for approximately 49 days.

157.  The widespread custom of excessive force and inmate abuse was ratified and tolerated by York County and the York County Prison Board.

158.  This widespread custom and practice was a moving force behind the death of Everett Palmer, Jr.

**WHEREFORE**, Plaintiff demands judgment in her favor, and against Defendants pursuant to 42 U.S.C. § 1983, in an amount in excess of One Million Dollars ($1,000,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, punitive and exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

Respectfully submitted,

/s/ John J. Coyle _____          Date: April 1, 2020
John J. Coyle, Esq.

**McELDREW YOUNG**                     **MERRITT LAW**
Daniel N. Purtell, Esquire             S. Lee Merritt, Esquire
  PA Attorney I.D. No.: 310376           PA Attorney I.D. No.: 314891
John J. Coyle, Esquire
  PA Attorney I.D. No.: 312084         123 S. Broad Street, Suite 2250
                                       Philadelphia, PA 19109
123 S. Broad Street, Suite 2250        (215) 545-8800
Philadelphia, PA 19109                 lee@leemerrittesq.com
(215) 545-8800
jim@mceldrewyoung.com                  *Pro Hac Vice Application Forthcoming*
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

24