IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE PALMER, AS ADMINISTRATRIX OF THE ESTATE OF EVERETT PALMER, JR.,** | : : : : : | Civ. No. 1:20-CV-00539 |
| **Plaintiff,** | : : | |
| vs. | : : | |
| YORK COUNTY, et al., | : : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## MEMORANDUM

Before the court is the motion for judgment on the pleadings (Doc. 52) filed by Defendants Eric Emig, Nicholas Cessna, Donald Kopp, Timothy Irizarry, Greggory Clark, William Lybrand, Tyler Larkin, Max Fink, Wayne Smith, Ted Konasol, Brandon Schneider, Nathan Fitzkee, Steven Bolding, and Ronald Belt (collectively "the Guard Defendants"). For the reasons set forth below, the motion will be denied.

### I. BACKGROUND

This action arises from the death of Everett Palmer, Jr., which occurred on April 9, 2018, while Mr. Palmer was in custody at York County Prison. Plaintiff Rose Palmer is the mother of Mr. Palmer and the duly appointed administratrix of his estate. (Doc. 26, ¶ 3.) The Guard Defendants, as alleged, are individuals that were

1

employed as prison guards at the York County Prison during the relevant period. (*Id.* ¶ 4.)

According to the amended complaint, on April 7, 2018, Mr. Palmer travelled from his home in Delaware to York County, Pennsylvania to voluntarily address an open warrant related to an old DUI charge. (*Id.* ¶ 16.) After speaking with authorities in York County, Mr. Palmer was arrested and taken into custody. (*Id.* ¶ 20.) He was brought before a Magisterial District Judge later that evening, and bail was set at $5,000. (*Id.* ¶¶ 20-21.) Mr. Palmer did not have the funds immediately available to him, so he was remanded to the custody of the York County Prison. (*Id.* ¶ 22.)

Sometime after Mr. Palmer arrived at the prison, prison officials determined that he was a suicide risk and he was therefore placed in an isolated cell under 24-hour watch. (*Id.* ¶¶ 25, 27.) Later that evening, Mr. Palmer informed two John Doe guards that he was hallucinating, but the guards failed to inform a medical professional and instead recorded Mr. Palmer's behavior as "Quiet/Seclusive" on the prison check sheet. (*Id.* ¶ 28-30.)

Mr. Palmer's mental health continued to decline throughout the night and into the early hours of April 8, 2018. He yelled and howled from his cell for long periods of time. (*Id.* ¶ 31.) At one point, he disrobed and rubbed urine on himself while he screamed at the guards assigned to observe him. (*Id.* ¶ 33.) As his screaming continued, Mr. Palmer ripped his mattress from the bed and stood on top of the bed

platform, causing one John Doe guard to joke to another, "he's not that big." (*Id.* ¶¶ 34-35.) On their check sheets, the guards recorded Mr. Palmer's behavior as "Self-Contained Activity" or "Quiet/Seclusive," and nobody alerted a medical professional. (*Id.* ¶¶ 36-37.)

Later in the morning on April 8, Mr. Palmer met with a mental health specialist at the prison who had not been informed about his prior behavior. (*Id.* ¶¶ 44-45.) The specialist assessed Mr. Palmer as suffering from psychosis and noted evidence of thought disorder or perceptual disturbance. (*Id.* ¶ 45.) Mr. Palmer was thereafter returned to his cell. (*Id.* ¶ 46.)

In the afternoon of April 8, surveillance video footage shows that one of the Guard Defendants approached Mr. Palmer's cell and handed him a bag containing what Ms. Palmer believes to be illicit methamphetamine. (*Id.* ¶ 47.) The amended complaint alleges Mr. Palmer was later found to have such high levels of methamphetamine and amphetamine in his blood that, given the half-life of the drug, it would have been "impossible" for him "to have consumed all of the methamphetamine prior to turning himself in to York County Authorities." (*Id.* ¶ 101.) The Guard Defendant handed the bag to Mr. Palmer "directly in front of" three other Guard Defendants, but none did anything to stop the transfer or alert a medical professional. (*Id.* ¶¶ 49-51.) The amended complaint also alleges that twice later that

evening, a medical provider was seen giving Mr. Palmer an unknown substance that was never recorded in his medical chart. (*Id.* ¶ 52.)

Mr. Palmer continued to deteriorate overnight and into the morning of April 9. He tore his mattress off his bed, searched for items in his toilet bowl, yelled incoherently, climbed on top of his sink, and screamed as he disrobed. (*Id.* ¶ 56-60.) Two of the Guard Defendants responded to Mr. Palmer's behavior by writing him an infraction for placing his mattress over the door, and they recorded his condition throughout this time as "Quiet/Seclusive" or "Self-Contained Activity" on the prison's check sheet. (*Id.* ¶¶ 61-62, 64.)

At around 4:00 am on April 9, Mr. Palmer "continued to scream and yell incomprehensibly, crawl and run around his cell naked, and try to remove his sink and toilet from the wall while Defendants watched but took no action." (*Id.* ¶ 72.) Mr. Palmer then began injuring himself by "slamming his fist, feet, and eventually his head into the cell door." (*Id.* ¶ 74.) As a result, the prison's tactical unit, which included ten of the Guard Defendants, was called to respond. (*Id.* ¶ 77.)

The tactical unit, or CERT team, arrived at Mr. Palmer's cell and advised him to lay on the ground and place his hands behind his back. (*Id.* ¶ 78.) Mr. Palmer complied for a brief period. (*Id.*) At around 4:17 am, the CERT team opened the cell door. (*Id.* ¶ 80.) One of the Guard Defendants tased Mr. Palmer, who was standing near the door with his hands clasped in front of him to be handcuffed, and Mr. Palmer

recoiled to the back of the cell. (*Id*. ¶¶ 80-81.) Another Guard Defendant then jumped on Mr. Palmer with a tactical shield, and six other Guard Defendants entered and piled on top as they kicked, struck, and stood on Mr. Palmer. (*Id*. ¶¶ 82-83.) Two Guard Defendants tased Mr. Palmer at least three more times total. (*Id*. ¶¶ 84-85.) At some point, a spit hood was placed over Mr. Palmer's head. (*Id*. ¶ 87.) Mr. Palmer laid at the bottom of the pile of guards for 3 minutes and 7 seconds. (*Id*. ¶ 86.)

    The CERT team eventually carried Mr. Palmer out of the cell and placed him in an Emergency Restraint Chair with his arms shackled over his head. (*Id*. ¶¶ 88-89.) As they locked him into the chair with the spit hood still over his head, Mr. Palmer's chest was heaving and his face turned blue. (*Id.* ¶ 90-91.) His chest then stopped moving, and he appeared to be unconscious. (*Id.* ¶ 92-93.) In response, the CERT team transported Mr. Palmer, with the spit hood over his head, to the prison's medical unit. (*Id.* ¶ 93.) When Mr. Palmer arrived, he showed no signs of breathing and had little or no pulse. (*Id.* ¶ 95.) According to the amended complaint, the spit hood was left on Mr. Palmer's head for 8 minutes and 13 seconds after he stopped breathing. (*Id.* ¶ 97.) Mr. Palmer was declared dead at a local hospital later that morning. (*Id.* ¶ 98.)

    A post-mortem analysis revealed extremely high levels of methamphetamine and amphetamine in Mr. Palmer's blood. (*Id.* ¶¶ 99-100.) As noted above, the amended complaint alleges that, given the half-life of methamphetamine, such high

5

levels would not have been possible unless Mr. Palmer ingested the substance while he was in custody. (*Id.* ¶ 101.)

Mr. Palmer's autopsy was performed by a coroner with the York County Coroner's Office, who ruled that the cause of death was "undetermined." (*Id.* ¶¶ 103, 106.) The amended complaint alleges that the coroner's conclusion contravened "the National Association of Medical Examiners position paper on Deaths in Custody," and that his findings in fact "lead to the unambiguous medical conclusion that [Mr. Palmer] died from asphyxiation." (*Id.* ¶¶ 106-107.)

On April 1, 2020, Ms. Palmer filed the original complaint in this action. (Doc. 1.) The original complaint named numerous defendants including, among others, York County, the York County Prison Board, the York County Coroner, the York County District Attorney, and various John Doe corporations including the manufacturer of the spit hood that was placed over Mr. Palmer's head. (*See id.* ¶¶ 4-22.) It also named "John Doe Prison Guards 1-10" as defendants and asserted claims against them for violations of the Fourteenth Amendment, assault and battery, and Pennsylvania wrongful death and survival action claims. (*See id.* pp. 13-16.)

In May 2020, Ms. Palmer obtained certain prison records and surveillance footage from York County pursuant to a York County Court Order, which she claims allowed her to identify for the first time those prison officials that were involved in

the events that led to Mr. Palmer's death. (*See* Doc. 57, p. 11.) As a result of the new information, Ms. Palmer amended her complaint on July 8, 2020. (Doc. 26.)

The amended complaint contains several new factual allegations, outlined above, and names multiple new defendants, including the Guard Defendants. The amended complaint alleges that the Guard Defendants were prison guards at York County Prison during the relevant period, and that they are liable in their individual capacities under Section 1983 for violating Mr. Palmer's Fourteenth Amendment rights, including by providing Mr. Palmer with methamphetamine that caused him to have a psychotic break, by repeatedly failing to alert medical personnel about his increasing mental instability, by using excessive force against him when the CERT team entered his cell, by placing a spit hood over Mr. Palmer's head that caused his breathing to stop, and by subsequently failing to remove the spit hood for more than eight minutes after his breathing stopped. (*See id.* ¶¶ 4, 55, 139, 140.) The amended complaint also asserts claims for assault and battery against the Guard Defendants, as well as a Pennsylvania wrongful death and survival action.

On November 20, 2020, the Guard Defendants filed a motion for judgement on the pleadings, arguing that all Ms. Palmer's claims against them are time barred. (Doc. 52.) The matter has been fully briefed and is ripe for disposition.

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed, but early enough to avoid a delay in trial. Judgement on the pleadings is appropriate if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir.2005) (citing *Soc'y Hill Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)). To be entitled to relief, the defendant must show that the plaintiff can prove no set of facts to support his or her claim which would entitle him or her to relief. *See Sikirica*, 416 F.3d at 220. In deciding a motion for judgment on the pleadings, the court must view the facts and the inferences drawn therefrom in the light most favorable to the nonmoving party. *Sikirica*, 416 F.3d at 220.

## III.    DISCUSSION

The Guard Defendants' motion correctly points out that Ms. Palmer has a statute of limitations problem. Ms. Palmer's claims against the Guard Defendants are all governed by two-year statute of limitations periods that began running on April 9, 2018, the date of Mr. Palmer's death. *See Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003); 42 Pa.C.S. § 5524; 42 Pa.C.S. § 5524. The statute of limitations for each of Ms. Palmer's claims against the Guard Defendants therefore

expired on April 9, 2020, approximately three months before Ms. Palmer named the Guard Defendants for the first time in this action by filing the amended complaint.

Given this timing issue, the parties appear to agree that Ms. Palmer can only maintain her claims against the Guard Defendants if they relate back to the original complaint she filed before the statute of limitations expired. Under Federal Rule of Civil Procedure 15(c), where an amendment to a pleading changes the party or the naming of the party against whom a claim is asserted, three conditions must be satisfied for the amendment to relate back to the original pleading. *See* Fed. R. Civ. P. 15(c). These conditions are: (1) that the claim against the defendant sought to be brought in arose out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) that within the 90–day period for service of the summons and complaint set forth in Rule 4(m), the newly-named defendant received notice of the commencement of the action such that it will not be prejudiced in defending on the merits; and (3) that within the same time period, the newly-added defendant must have known, or should have known, that but for a mistake, he or she would have been named as a defendant in the initial pleading. *Miller v. Hassinger*, 173 F. App'x 948, 955 (3d Cir. 2006) (citing *Singletary v. Pennsylvania Dep't of Corrections*, 266 F.3d 186, 194 (3d Cir. 2001)).

Only the second and third conditions involving notice are in dispute here. To determine whether a defendant had actual notice that the initial complaint was filed

and that he or she was one of the intended defendants, "the focus is on whether the defendant had timely notice that the plaintiff sought to assert claims" against him or her. *Green v. Robinson*, 112 F. App'x 165, 169 (3d Cir. 2004). The Third Circuit also permits notice to be imputed under certain circumstances based on the presence of a shared attorney or identity of interest. Under the shared attorney method, "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary*, 266 F.3d at 196. Under the identity of interest method, notice is imputed to parties that "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright, Federal Practice and Procedure § 1499, at 146 (2d ed. 1990)).

Here, the Guard Defendants argue that they could not have had actual notice of this case within the 90-day period for service of the summons and complaint because the amended complaint that brought them into this action was filed more than 90 days after the original complaint was filed. This argument is unpersuasive. As explained above, the notice conditions of the relation back doctrine focus on whether and when the newly-named defendant had knowledge of the *original* complaint and the fact that the plaintiff *sought* to assert claims against him or her.

*See Green,* 112 F. App'x at 169. Neither inquiry necessarily turns on when the amended complaint was filed or served.

Rather, the law in the Third Circuit is clear that "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary*, 266 F.3d at 195. Contrary to the Guard Defendants' arguments, the record by no means forecloses that they received sufficient notice of this action and Ms. Palmer's intent to name them as defendants within 90 days of its commencement. Ms. Palmer's original complaint made clear that she sought to learn the identity of the guards that were involved in her son's death and assert claims against them. The Guard Defendants do not submit any affidavits or other evidence to suggest when they learned about this case, and Ms. Palmer has not had an opportunity to conduct discovery. Moreover, considering the gravity of the underlying events and the internal investigations and other proceedings that grew out of Mr. Palmer's death, the media attention that this case spurred, and representations in Ms. Palmer's brief regarding communications between counsel, the court cannot conclude with any confidence that discovery is unlikely to yield evidence that some or all of the Guard Defendants had sufficient notice for purpose of the relation back doctrine. (*See e.g.*, Doc. 7, Doc. 57, pp, 3-7, 14-17.)

Ms. Palmer's opposition brief also demonstrates that she acted expeditiously to identify and name the Guard Defendants in this action, and that her failure to do so sooner was largely attributable to York County's repeated refusals to turn over records, even after it was ordered to do so by multiple Pennsylvania judges. (*See* Doc 57, pp. 2-7.) There may well have been a good reason for those refusals, and the Guard Defendants should not suffer prejudice for the actions of a co-defendant, but it would be manifestly unjust to simply assume at this stage, without the benefit of any discovery and or even a single sworn statement by a defendant, that none of the Guard Defendants had sufficient notice of this action for the amended complaint to relate back. *See generally Miller*, 173 F. App'x at 956. As such, the Guard Defendants' motion for judgement on the pleadings will be denied without prejudice to their right to renew their statute of limitations argument in a later motion for summary judgment.[1]

---

[1] The court agrees with the Guard Defendants' argument that notice cannot be imputed to them based solely on the fact that they share an attorney with an originally-named defendant given that the shared representation did not begin until after the Rule 4(m) period expired. *See Miller*, 173 F. App'x at 956 ("The shared attorney method requires that a plaintiff demonstrate that there was 'some communication or relationship' between the attorney for the named defendants and the parties sought to be added as defendants prior to the expiration of the 120–day period for service of the summons and complaint.") (quoting *Singletary*, 266 F.3d at 196-97).

## IV. CONCLUSION

For the reasons set forth above, the court will deny the Guard Defendants' motion for judgment on the pleadings. An appropriate order shall follow.

Dated: February 9, 2021

*s/Sylvia H. Rambo*
Sylvia H. Rambo
United States District Judge
