IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE PALMER, AS** | : | **Civ. No. 1:20-CV-00539** |
| **ADMINISTRATRIX OF THE** | : | |
| **ESTATE OF EVERETT** | : | |
| **PALMER, JR.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **YORK COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## MEMORANDUM

Before the court is the motion for judgment on the pleadings and alternatively summary judgment filed by Defendants David Zinn, Catherine Steuffer, Joanne Webster, Diana Knight, Joshua Pauley, Katherine Shield, and Bryce Lefever (collectively the "Individual PrimeCare Defendants") and PrimeCare Medical, Inc. ("PrimeCare"). (Doc. 63.) For the reasons set forth below, the motion will be granted in part and denied in part.

## I.     BACKGROUND

This action arises from the death of Everett Palmer, Jr., which occurred on April 9, 2018, while Mr. Palmer was in custody at York County Prison. Plaintiff Rose Palmer is the mother of Mr. Palmer and the duly appointed administratrix of his estate. (Doc. 26, ¶ 3.) PrimeCare is a corporation that that has a contract with

York County to provide medical services to inmates incarcerated in the York County Prison. The Individual PrimeCare Defendants, as alleged, are employees of PrimeCare who provide medical services within York County Prison.

According to the amended complaint, on April 7, 2018, Mr. Palmer travelled from his home in Delaware to York County, Pennsylvania to voluntarily address an open warrant related to an old DUI charge. (*Id*. ¶ 16.) After speaking with authorities in York County, Mr. Palmer was arrested and taken into custody. (*Id.* ¶ 20.) He was brought before a Magisterial District Judge later that evening, and bail was set at $5,000. (*Id.* ¶¶ 20-21.) Mr. Palmer did not have the funds immediately available to him, so he was remanded to the custody of the York County Prison. (*Id.* ¶ 22.)

Sometime after Mr. Palmer arrived at the prison, prison officials determined that he was a suicide risk and he was therefore placed in an isolated cell under 24-hour watch. (*Id.* ¶¶ 25, 27.) Later that evening, Mr. Palmer informed two guards that he was hallucinating, but the guards failed to inform a medical professional and instead recorded Mr. Palmer's behavior as "Quiet/Seclusive" on the prison check sheet. (*Id*. ¶ 28-30.)

Mr. Palmer's mental health continued to decline throughout the night and into the early hours of April 8, 2018. He yelled and howled from his cell for long periods of time. (*Id.* ¶ 31.) At one point, he disrobed and rubbed urine on himself while he screamed at the guards assigned to observe him. (*Id.* ¶ 33.) As his screaming

continued, Mr. Palmer ripped his mattress from the bed and stood on top of the bed platform, causing one guard to joke to another, "he's not that big." (*Id.* ¶¶ 34-35.) On their check sheets, the guards recorded Mr. Palmer's behavior as "Self-Contained Activity" or "Quiet/Seclusive," and nobody alerted a medical professional. (*Id.* ¶¶ 36-37.)

Later in the morning on April 8, Mr. Palmer met with one of the Individual PrimeCare Defendants, a mental health specialist, who had not been informed about Mr. Palmer's prior behavior. (*Id.* ¶¶ 44-45.) The Individual PrimeCare Defendant assessed Mr. Palmer as suffering from psychosis and noted evidence of thought disorder or perceptual disturbance. (*Id.* ¶ 45.) The Individual PrimeCare Defendant nevertheless did not refer Mr. Palmer to a mental health facility, and Mr. Palmer was instead returned to his cell. (*Id.* ¶ 46.)

In the afternoon of April 8, surveillance video footage shows that one guard approached Mr. Palmer's cell and handed him a bag containing what Ms. Palmer believes to be illicit methamphetamine. (*Id.* ¶ 47.) The amended complaint alleges Mr. Palmer was later found to have such high levels of methamphetamine and amphetamine in his blood that, given the half-life of the drug, it would have been "impossible" for him "to have consumed all of the methamphetamine prior to turning himself in to York County Authorities." (*Id.* ¶ 101.) The guarded handed the bag to Mr. Palmer "directly in front of" several other guards, but none did anything to stop

the transfer or alert a medical professional. (*Id.* ¶¶ 49-51.) The amended complaint also alleges that twice later that evening, an unidentified PrimeCare employee was seen giving Mr. Palmer an unknown substance that was never recorded in his medical chart. (*Id.* ¶ 52.)

Mr. Palmer continued to deteriorate overnight and into the morning of April 9. He tore his mattress off his bed, searched for items in his toilet bowl, yelled incoherently, climbed on top of his sink, and screamed as he disrobed. (*Id.* ¶ 56-60.) Two of guards responded to Mr. Palmer's behavior by writing him an infraction for placing his mattress over the door, and they recorded his condition throughout this time as "Quiet/Seclusive" or "Self-Contained Activity" on the prison's check sheet. (*Id.* ¶¶ 61-62, 64.)

At around 3:30 am on April 9, one of the Individual PrimeCare Defendants came to Mr. Palmer's cell for a scheduled wellness check. (*Id.* ¶ 65.) No corrections officer informed the Individual PrimeCare Defendant about Mr. Palmer's deteriorating health. (*Id.* ¶ 66.) The Individual PrimeCare Defendant stood at Mr. Palmer's cell door for 11 seconds before walking away and recorded in the medical chart, "Patient seen at cell door for wellness check. Patient kneeling behind cell door. Patient refused to respond to medical staff, patient rambling, incoherent. Basic needs provided for." (*Id.* ¶¶ 67-68.) According to the amended complaint,

"contemporaneous surveillance footage from inside the cell indicates that Mr. Palmer was naked and speaking to himself incoherently." (*Id.* ¶ 69.)

At around 4:00 am, Mr. Palmer "continued to scream and yell incomprehensibly, crawl and run around his cell naked, and try to remove his sink and toilet from the wall while Defendants watched but took no action." (*Id.* ¶ 72.) Mr. Palmer then began injuring himself by "slamming his fist, feet, and eventually his head into the cell door." (*Id.* ¶ 74.) As a result, the prison's tactical unit was called to respond. (*Id.* ¶ 77.)

The tactical unit, or CERT team, arrived at Mr. Palmer's cell and advised him to lay on the ground and place his hands behind his back. (*Id.* ¶ 78.) Mr. Palmer complied for a brief period. (*Id.*) At around 4:17 am, the CERT team opened the cell door. (*Id.* ¶ 80.) One guards tased Mr. Palmer, who was standing near the door with his hands clasped in front of him to be handcuffed, and Mr. Palmer recoiled to the back of the cell. (*Id.* ¶¶ 80-81.) Another guard then jumped on Mr. Palmer with a tactical shield, and six other guards entered and piled on top as they kicked, struck, and stood on Mr. Palmer. (*Id.* ¶¶ 82-83.) Two guards tased Mr. Palmer at least three more times total. (*Id.* ¶¶ 84-85.) At some point, a spit hood was placed over Mr. Palmer's head. (*Id.* ¶ 87.) Mr. Palmer laid at the bottom of the pile of guards for 3 minute and 7 seconds. (*Id.* ¶ 86.)

The CERT team eventually carried Mr. Palmer out of the cell and placed him in an Emergency Restraint Chair with his arms shackled over his head. (*Id.* ¶¶ 88-89.) As they locked him into the chair with the spit hood still over his head, Mr. Palmer's chest was heaving and his face turned blue. (*Id.* ¶ 90-91.) His chest then stopped moving, and he appeared to be unconscious. (*Id.* ¶ 92-93.) In response, the CERT team transported Mr. Palmer, with the spit hood over his head, to the prison's medical unit. (*Id.* ¶ 93.)

Upon arriving at medical unit, four of the Individual PrimeCare Defendants met with Mr. Palmer, who showed no signs of breathing and had little or no pulse. The amended complaint alleges that despite Mr. Palmer's critical condition, the four Individual PrimeCare Defendants failed to remove the spit hood and restraint chair and allowed the spit hood to remain on Mr. Palmer's head for more than eight minutes after he stopped breathing. (*Id.* ¶ 97.) Mr. Palmer was declared dead at a local hospital later that morning. (*Id.* ¶ 98.)

A post-mortem analysis revealed extremely high levels of methamphetamine and amphetamine in Mr. Palmer's blood. (*Id.* ¶¶ 99-100.) As noted above, the amended complaint alleges that, given the half-life of methamphetamine, such high levels would not have been possible unless Mr. Palmer ingested the substance while he was in custody. (*Id.* ¶ 101.)

Mr. Palmer's autopsy was performed by a coroner with the York County Coroner's Office, who ruled that the cause of death was "undetermined." (*Id.* ¶¶ 103, 106.) The amended complaint alleges that the coroner's conclusion contravened "the National Association of Medical Examiners position paper on Deaths in Custody," and that his findings in fact "lead to the unambiguous medical conclusion that [Mr. Palmer] died from asphyxiation." (*Id.* ¶¶ 106-107.)

On April 1, 2020, Ms. Palmer filed the original complaint this action. (Doc. 1.) The original complaint named numerous defendants including, among others, PrimeCare Inc., York County, the York County Prison Board, and various John Doe corporations, including the manufacturer of the spit hood that was placed over Mr. Palmer's head. (*See id.* ¶¶ 4-22.) The original complaint also named as defendants "John Doe Prime Care Employees 1-5" and asserted claims against them for violations of the Fourteenth Amendment based on their alleged failure to provide Mr. Palmer with necessary medical care after observing his mental instability and necessary emergency care following the removal from his cell. (*Id.* ¶¶ 7, 48, 101-104.) The original complaint did not, however, name any of the Individual PrimeCare Defendants.

In May 2020, Ms. Palmer obtained certain prison records and surveillance footage from York County pursuant to a York County Court Order, which she claims allowed her to identify for the first time those prison officials and medical care

workers that were involved in the events that led to Mr. Palmer's death. (*See* Doc. 65, p. 11.) As a result of the new information, Ms. Palmer amended her complaint on July 8, 2020. (Doc. 26.)

The amended complaint contains several new fact allegations, outlined above, and names multiple new defendants, including the Individual PrimeCare Defendants. The amended complaint alleges that the Individual PrimeCare Defendants provided medical care at York County Prison during the relevant period and that they are liable in their individual capacities under Section 1983 for violating Mr. Palmer's Fourteenth Amendment rights, including by repeatedly failing to report or otherwise address Mr. Palmer's deteriorating mental health, and by leaving the spit hood over Mr. Palmer's head for more than eight minutes after he stopped breathing. (*Id.* ¶¶ 7, 38-46, 65-71, 94-96, 133-41, 147-49, 154-58.) As with the original complaint, the amended complaint also asserts Fourteenth Amendment claims against PrimeCare under a theory of *respondeat superior* based on the actions of the Individual PrimeCare Defendants and multiple John Doe PrimeCare employees. (*Id.* ¶¶ 141, 149, 158.)

On December 15, 2020, the Individual PrimeCare Defendants and PrimeCare filed a motion for judgment on the pleadings. (Doc. 63.) The motion, which alternatively requests summary judgment, argues that Ms. Palmer's claims against the Individual Defendants must be dismissed because they are time barred, and that

Ms. Palmer's claims against PrimeCare must be dismissed because they improperly rely on a theory of *respondeat superior*. (Doc. 52.) The motion has been fully briefed and is ripe for disposition.

## II.   <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment after the pleadings are closed, but early enough to avoid a delay in trial. Judgement on the pleadings is appropriate if "the movant clearly establishes there are no material issues of fact, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir.2005) (citing *Soc'y Hill Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir.1980)). To be entitled to relief, the defendant must show that the plaintiff can prove no set of facts to support his or her claim which would entitle him or her to relief. *See Sikirica*, 416 F.3d at 220.

Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment and instructs that summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is "material" if it might affect the outcome of the suit under the applicable substantive law and is "genuine" only if there is a sufficient evidentiary basis for a reasonable factfinder to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. "Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor." A*zur v. Chase Bank, USA, Nat'l Ass'n,* 601 F.3d 212, 216 (3d Cir. 2010). Whether evaluating a motion for judgment on the pleadings or a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his or her favor. *Sikirica*, 416 F.3d at 220; *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

## III.   **DISCUSSION**

PrimeCare's motion correctly points out that Ms. Palmer has a statute of limitations problem. Ms. Palmer's claims against the Individual PrimeCare Defendants are all governed by two-year statute of limitations periods that began running on April 9, 2018, the date of Mr. Palmer's death. *See Garvin v. City of Phila.*, 354 F.3d 215, 220 (3d Cir. 2003); 42 Pa.C.S. § 5524; 42 Pa.C.S. § 5524. The statute of limitations for each of Ms. Palmer's claims against the Individual PrimeCare Defendants therefore expired on April 9, 2020, approximately three months before Ms. Palmer named them for the first time in this action by filing the amended complaint.

Given this timing issue, the parties appear to agree that Ms. Palmer can only maintain her claims against the Individual PrimeCare Defendants if they relate back to the original complaint she filed before the statute of limitations expired. Under Federal Rule of Civil Procedure 15(c), where an amendment to a pleading changes the party or the naming of the party against whom a claim is asserted, three conditions must be satisfied for the amendment to relate back to the original pleading. *See* Fed. R. Civ. P. 15(c). These conditions are: (1) that the claim against the defendant sought to be brought in arose out of the same conduct, transaction, or occurrence set forth in the original pleading; (2) that within the 90–day period for service of the summons and complaint set forth in Rule 4(m), the newly-named defendant have received notice of the commencement of the action such that it will not be prejudiced in defending on the merits; and (3) that within the same time period, the newly-added defendant must have known, or should have known, that but for a mistake, he or she would have been named as a defendant in the initial pleading. *Miller v. Hassinger*, 173 F. App'x 948, 955 (3d Cir. 2006) (citing *Singletary v. Pennsylvania Dep't of Corrections*, 266 F.3d 186, 194 (3d Cir. 2001)).

Only the second and third conditions involving notice are in dispute here. To determine whether a defendant had actual notice that the initial complaint was filed and that he or she was one of the intended defendants, "the focus is on whether the defendant had timely notice that the plaintiff sought to assert claims" against him or

her. *Green v. Robinson*, 112 F. App'x 165, 169 (3d Cir. 2004). The Third Circuit also permits notice to be imputed under certain circumstances based on the presence of a shared attorney or identity of interest. Under the shared attorney method, "when an originally named party and the party who is sought to be added are represented by the same attorney, the attorney is likely to have communicated to the latter party that he may very well be joined in the action." *Singletary*, 266 F.3d at 196. Under the identity of interest method, notice is imputed to parties that "are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* at 197 (quoting 6A Charles A. Wright, Federal Practice and Procedure § 1499, at 146 (2d ed. 1990)).

Here, the Individual PrimeCare Defendants argue that they could not have had actual notice of this case within the 90-day period for service of the summons and complaint because the amended complaint that brought them into this action was filed more than 90 days after the original complaint was filed. This argument is unpersuasive. As explained above, the notice conditions of the relation back doctrine focus on whether and when the newly-named defendant had knowledge of the *original* complaint and the fact that the plaintiff *sought* to assert claims against him or her. *See Green,* 112 F. App'x at 169. Neither inquiry necessarily turns on when the amended complaint was filed or served.

Rather, the law in the Third Circuit is clear that "notice may be deemed to have occurred when a party who has some reason to expect his potential involvement as a defendant hears of the commencement of litigation through some informal means." *Singletary*, 266 F.3d at 195. Contrary to the Individual PrimeCare Defendants' arguments, the record by no means forecloses that they received sufficient notice of this action and Ms. Palmer's intent to name them as defendants within 90 days of its commencement. Ms. Palmer's original complaint made clear that she sought to learn the identity of the individual PrimeCare employees that were involved in her son's death and assert claims against them. The PrimeCare Defendants do not submit any affidavits or other evidence to suggest when they learned about this case, and Ms. Palmer has not had an opportunity to conduct discovery. Moreover, considering the totality of the circumstances—including the gravity of the underlying events, the investigations spurred by Mr. Palmer's death, the litigation notice sent to PrimeCare in June 2019, the allegations in the original complaint, the now-shared representation between PrimeCare and the Individual PrimeCare Defendants, and the media attention that this case spurred, the court cannot conclude with any confidence that discovery is unlikely to yield evidence that some or all of the Individual PrimeCare Defendants had sufficient notice for purpose of the relation back doctrine. (*See* Doc. 1 ¶¶ 7, 48, 101-04, Doc. 7, Doc. 65, pp. 7,

18-20.)[1] As such, the Individual PrimeCare Defendants' motion for judgment based on the statute of limitations will be denied without prejudice to their right to renew their argument in a later motion for summary judgment.[2]

Ms. Palmer's Section 1983 constitutional claims against PrimeCare, however, must be dismissed. The amended complaint makes clear that Ms. Palmer's Section 1983 claims against PrimeCare are all based upon a theory of respondeat superior, and it is relatively well-established in this Circuit that "a private corporation contracted by a prison to provide health care for inmates cannot be held liable on a respondeat superior theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *Carroll v. Lancaster Cty.*, 301 F. Supp. 3d 486, 509 (E.D. Pa. 2018) (internal quotations and citations omitted); *see Afdahl v. Cancellieri*, 463 F. App'x 104, 109 (3d Cir. 2012) (affirming district court's

---

[1] Ms. Palmer's opposition brief also demonstrates that she acted expeditiously to identify and name the Individual PrimeCare Defendants in this action, and that her failure to do so sooner was largely attributable to repeated refusals by York County to turn over records, even after it was ordered to do so by multiple Pennsylvania judges. *See generally Miller*, 173 F. App'x at 956.

[2] The court agrees with the Individual PrimeCare Defendants' argument that notice cannot be imputed to them based solely on the fact that they share an attorney with an originally-named defendant given that the shared representation did not begin until after the Rule 4(m) period expired. *See Miller*, 173 F. App'x at 956 ("The shared attorney method requires that a plaintiff demonstrate that there was 'some communication or relationship' between the attorney for the named defendants and the parties sought to be added as defendants prior to the expiration of the 120–day period for service of the summons and complaint.") (quoting *Singletary*, 266 F.3d at 196-97).

dismissal of Section 1983 claims asserted against a prison healthcare contractor and noting that "liability under § 1983 cannot be based solely upon the doctrine of respondeat superior") (citing *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003)); *see also Monell v. Dep't of Sec. Servs.*, 436 U.S. 658, 691–94 (1978). Ms. Palmer does not allege that PrimeCare had a policy or custom exhibiting deliberate indifference to a prisoner's serious medical needs. Nor does she allege any other relevant policy or custom. As such, the amended complaint fails to state a Section 1983 claim against PrimeCare, and each of Ms. Palmer's three claims asserted against it must be dismissed.[3] The court will therefore dismiss the complaint as asserted against PrimeCare without prejudice. There is no reason to believe that amendment would be futile, and PrimeCare makes no substantive argument to the contrary.

Finally, Ms. Palmer's claims asserted against Individual PrimeCare Defendant Katherine Shield must be dismissed because the amended complaint does not allege that Ms. Shield was personally involved in any of the underlying events and does otherwise not set forth any basis for imposing liability against her. It instead merely avers that Ms. Shield is an employee of PrimeCare who provides medical

---

[3] The amended complaint does not specifically allege an independent Pennsylvania wrongful death claim against PrimeCare and Ms. Palmer does not argue otherwise in her opposition brief.

services to York County Prison. (Doc. ¶ 7.) The claims asserted against Ms. Shield will therefore be dismissed without prejudice.

## IV.   **<u>CONCLUSION</u>**

For the reasons set forth above, the court will grant the Individual PrimeCare Defendants' and PrimeCare's motion for judgment on the pleadings in part and deny the motion in part. An appropriate order shall follow.


Dated: February 22, 2021


*<u>s/Sylvia H. Rambo</u>*
Sylvia H. Rambo
United States District Judge
