

**Mailing Address:**
P.O. Box 999, Harrisburg, PA  17108
Street Address:
225 Grandview Avenue, Fifth Floor
Camp Hill, PA  17011
Phone:  717.237.7100  Fax:  717.237.7105

*Matthew R. Clayberger*
*(717) 237-7150*
*mclayberger@tthlaw.com*

July 30, 2021

*Via ECF Filing*

Hon. Sylvia H. Rambo
228 Walnut Street, Room 860
Harrisburg, PA 17101

   Re: Palmer v. York County, *et al.*
     1:20-CV-539
     Discovery dispute between the parties re. 2017 DOC Report

Dear Judge Rambo:

  I represent the County Defendants in the above-captioned matter.[1] This is a civil rights action involving claims based on Everett Palmer's incarceration and in-custody death at the York County Prison.  I am writing to request the Court's assistance in resolving a discovery dispute that has recently arisen.  The discovery dispute is summarized below.

  I, with the agreement of Plaintiff's counsel, respectfully request that the Court convene a phone conference to resolve the dispute.[2]

## Background of the Current Discovery Dispute

  On or about July 8, 2021, Plaintiff served a subpoena on the Pennsylvania Department of Corrections ("DOC"). The subpoena seeks documents, including a 2017 report prepared by the DOC detailing various recommendations for the York County

---

[1] The County Defendants consist of Defendants York County, York County Prison Board of Inspectors, Eric Emig, Nicholas Cessna, Donald Kopp, Timothy Irizarry, Greggory Clark, William Lybrand, Tyler Larkin, Max Fink, Wayne Smith, Ted Konasol, Nathan Fitzkee, Steven Bolding, and Ronald Belt.

[2] To the extent this Honorable Court intends to refer this discovery dispute to a magistrate for resolution, the County Defendants would prefer the appointment of Magistrate Judge Carlson.

Prison ("2017 Report"). After receiving and reviewing the 2017 Report, on July 14, 2021, I provided notice to Plaintiff's counsel that County Defendants object to the subpoena calling for the production of the 2017 Report. Thereafter, Plaintiff's counsel responded, indicating that they would be willing to mark the report as confidential and limit its view to attorneys and their respective experts; however, Plaintiff's counsel still insisted on the production of the report. Plaintiff's counsel also advised that they would be willing to schedule a phone conference with the Court to address this issue.

### Background of the 2017 Report

In February 2017, the York County Prison Board requested that the DOC undertake a comprehensive top-to-bottom operations and security audit of the York County Prison as the County was in the process of recruiting a new warden and developing a new plan for the administration and operation of the facility. The request was approved by the Pennsylvania Secretary of Corrections. After receiving approval, teams of DOC officials were dispatched to the York County Prison, where they completed a detailed operational analysis of the facility. As a result of the audit, the Department of Corrections issued a voluminous report, i.e. the 2017 Report, setting forth identified operational and security issues, with recommendations for addressing and improving the same. The report and its attachments were intended to be confidential and were labeled as "Corrections Confidential." The confidentiality statement on the 2017 Report specifies that the report is not public information and is not to be released without the approval of the Pennsylvania Secretary of Corrections or its designee. **With the Court's permission, the County Defendants are prepared to submit a copy of the 2017 Report for in camera review.**

### County Defendants' Legal Position Regarding Their Objections to the Production of the 2017 Report

The district court in Beckwith v. Blair Cty, 2019 U.S. Dist. LEXIS 12728 (W.D. Pa. January 28, 2019) was presented with almost the exact same situation as is currently in dispute. Plaintiff sought to compel an unredacted copy of the Pennsylvania Department of Corrections Full Scale Assessment of Blair County Prison Operations. Beckwith, 2019 U.S. Dist. LEXIS 12728, *1. Blair County sought to prevent disclosure of the report pursuant to the law enforcement privilege and the deliberative process privilege. Id. at *6-7. Plaintiff, as administratix of the estate of Beckwith, alleged civil rights violations that resulted in Samantha Beckwith committing suicide within her prison cell. Id. at *3-4.

After Beckwith's death, at the specific request of the Blair County Prison Board, the DOC conducted an assessment of the Prison's operations. Id. at 5. Teams of DOC officials

evaluated the prison's policies and procedures across several areas, including staffing, security vulnerabilities, sexual assault, mental health, training, and maintenance. Id. The teams identified issues and made recommendations for each category. Id. The 2017 Report in dispute in this case is the same type of report as in Beckwith. The only difference, which is an important distinction, is that the 2017 Report was completed prior to Everett Palmer ever stepping foot into the York County Prison, whereas the DOC assessment in Beckwith was conducted after, and partially in response to, Samantha Beckwith's suicide, and the report was sought in the course of that related litigation.

**The entirety of the 2017 Report is protected from disclosure pursuant to the deliberative process privilege.**

In Beckwith, the court agreed with Blair County that the observations, recommendations, and deliberations in the DOC report were protected by the deliberative process privilege. Beckwith, 2019 U.S. Dist. LEXIS 12728, *7. The deliberative process privilege is a form of executive privilege that protects pre-decisional communications that "reflect[] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Id. at *15.

After the court determines that the privilege applies, the court must balance the parties' interests, considering five factors: (1) the relevance of the evidence sought to be protected; (2) the availability of other evidence; (3) the seriousness of the litigation and the issues involved; (4) the role of the government in the litigation; and (5) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable. Id. at *16. Although the information the Beckwith plaintiff sought met the low bar for relevance, and the litigation and issues involved were serious, the other factors overwhelmingly weighed in favor of protection from disclosure. See id. at *19-20. For example, as to the second factor of the analysis, the court noted that the plaintiff could obtain the evidence through the use of experts and did not need the DOC report to obtain evidence to support her claims. Id. at *20.

Additionally, and more importantly, the court found that there was a significant possibility of future timidity by government employees if the court ordered the production of the DOC report. Id. By compelling production, voluntary assessments of prison policies would be discouraged and would chill participation in such assessments. Without these candid assessments of prison policies, the quality of prison decisions would likely be affected, ultimately resulting in harm to prison employees and prisoners. Id.

**THOMAS, THOMAS & HAFER** LLP

Page 4

As the balance weighed in favor of protecting the privileged information from disclosure, the court found that the observations, recommendations, and deliberations in the DOC report were properly redacted, but that certain segments of the DOC report that contained factual, not deliberative, information needed to be produced. Id. at *7.

Using the five factors set forth in Beckwith, the balance weighs in favor of protecting the information contained within the 2017 Report from being produced in this case. The 2017 Report is minimally relevant, if not completely irrelevant, to this case, which involves claims for deliberate indifference based on an in-custody death that occurred after the 2017 Report was completed. As in Beckwith, evidence to support the Plaintiff's claims can be obtained from other sources other than the 2017 Report, such as experts, and Plaintiff has no compelling need for the 2017 Report. Thus, the second factor of the test weighs heavily against disclosure.

This litigation, and the alleged issues raised within it, are serious. However, the same serious concerns the court raised in Beckwith regarding the possibility for future timidity by government employees are the exact same concerns that are raised by the production of the 2017 Report. If county prisons are required to produce confidential reports that are prepared for the specific purpose of identifying and improving operational issues, it is likely that county prisons will simply stop requesting that the DOC involve itself in such matters. This would be a detriment to the public as a whole, and public policy should encourage the unfettered ability of a county prison to obtain these reports without the risk that they would be produced and used against them later in suits seeking monetary damages. Therefore, when the interests of the parties are balanced, it is clear that the 2017 Report is protected and should not be produced.

However, unlike the court's decision in Beckwith, none of the factual information contained within the 2017 Report should be produced. In Beckwith, because the assessment was requested after Samantha Beckwith's suicide, the factual information contained within the DOC's report was relevant to the suit. Unlike Beckwith, the 2017 Report was not requested or generated in response to the factual allegations in the Amended Complaint. The assessment was requested and the 2017 Report was completed prior to Everett Palmer's incarceration and in-custody death. Therefore, none of the factual information within the report is relevant to Plaintiff's claims, and accordingly, should not be produced. Additionally, much of the factual information raises institutional and security concerns, making its production inappropriate, as discussed in more detail below.

**The identities of the individuals who participated in the creation of the 2017 Report are protected from disclosure pursuant to the law enforcement investigatory privilege.**

In <u>Beckwith</u>, Blair County asserted, and the court agreed, that the identities of the individuals who participated in the DOC assessment were protected from disclosure based on the law enforcement investigatory privilege. <u>Id.</u> at *7. The law enforcement investigatory privilege is an executive privilege defined as "the government's privilege to prevent disclosure of certain information whose disclosure would be contrary to the public interest." <u>Id.</u> at *8. "When an executive privilege is asserted, the court must balance the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action." <u>Id.</u>

The court in <u>Beckwith</u> used ten factors set forth in <u>Frankenhauser v. Rizzo</u>, 59 F.R.D. 339, 344 (E.D. Pa. 1973) to conduct the balancing test. <u>Id.</u> at *10. The factor assigned the most weight by the court was the importance of the information to the plaintiff's case, but this factor weighed in favor of protection because the identities of the involved individuals had no bearing on, or relevance to, plaintiff's case. <u>Id.</u> at *10, 12-13. Additionally, the plaintiff could obtain the names of individuals with knowledge through other discovery methods and did not need the DOC report to identify them. <u>Id.</u> at *13. Even though the plaintiff argued that she could sign a confidentiality agreement to protect the identity of the participating individuals, the court found that revealing the identities of the individuals, even pursuant to a confidentiality agreement, would still likely discourage individuals from assisting with similar DOC assessments for fear of becoming involved in litigation. <u>Id.</u> at *12.

Just as in <u>Beckwith</u>, the names of the individuals who prepared the 2017 Report—which names are enumerated in the report itself—have no bearing on Plaintiff's case and are irrelevant to Plaintiff's claims. The 2017 Report was completed prior to Everett Palmer's incarceration at the York County Prison, and therefore, the individuals would have no knowledge of the factual circumstances underlying Plaintiff's claims in any event.

**Producing the 2017 Report raises institutional and security concerns, which outweigh Plaintiff's need for the information.**

When discoverable information raises institutional and security concerns, the court must balance the need for the information and the extent the information compromises security. <u>McAllister v. Weikel</u>, No. 1:12-CV-2273, 2015 U.S. Dist. LEXIS 83777, at *5 (M.D. Pa. June 29, 2015). If the institutional and security concerns outweigh the need for

the information, then the request is inappropriate and should be denied. See Id. at *6; see also Walker v. Regan, No. 13-7556, 2019 U.S. Dist. LEXIS 25517, at *10-12 (E.D. Pa. Feb. 14, 2019).

In both McAllister and Walker, the courts found that providing requested policies and regulations could present security risks which outbalanced the plaintiff's need for the policy. McAllister v. Weikel, 2015 U.S. Dist. LEXIS 83777, at *5; Walker v. Regan, 2019 U.S. Dist. LEXIS 25517, at *11-12. In McAllister, the plaintiff sought production of the prison's policy and regulations on transporting unruly inmates. McAllister, 2015 U.S. Dist. LEXIS 83777, at *5. The court found that producing this type of policy would reveal confidential practices that inmates could potentially use to their advantage against correctional officers. Id. Additionally, the policy was not relevant to the plaintiff's excessive force claim because the alleged assault occurred in the prison cells, not during a transport. Id. Accordingly, the request was denied. Id. Similarly, in Walker, the plaintiff sought the production of the Department of Correction's H-Code policy dealing with high risk inmates. Walker v. Regan, 2019 U.S. Dist. LEXIS 25517, at *3-4. The court found that providing the policy could present a "substantial security risk," which outweighed the plaintiff's need for the policy. Id. at *11-12.

As in Walker and McAllister, if produced, the 2017 Report would reveal confidential practices that inmates could potentially use to their advantage against correctional officers. The vulnerabilities that are identified in the report could be used as a roadmap for exploitation, creating grave security risks to prison staff and inmates alike. For instance, the report includes information regarding where cameras are, and are not, located. The report also identifies security vulnerabilities within the facility and around the permitter. Making this type of information public would certainly increase the safety risks to prison staff and inmates.

Furthermore, the overwhelming majority of the information contained within the 2017 Report is utterly unrelated to the facts, circumstances, and legal issues of this case. For example, the vulnerabilities regarding perimeter fencing, personnel changes in the food service department, and laundry sanitation schedules are completely irrelevant to this litigation, yet all of those issues are contained in the 2017 Report that Plaintiff seeks. The security concerns outweigh Plaintiff's purported need for the 2017 Report, and therefore, production of the report is inappropriate.

The County Defendants thank Your Honor in advance for the Court's assistance in scheduling a phone conference intended to resolve the discovery dispute regarding the subpoena to the DOC calling for the production of the 2017 Report. If Your Honor has

**THOMAS, THOMAS & HAFER** LLP

Page 7

any questions or concerns about the dispute or the instant request for a phone conference, please do not hesitate to contact me. ***Again, if this Honorable Court permits it, the County Defendants are prepared to submit the 2017 Report for in camera review.***

                                            Respectfully submitted,

                                            **Thomas, Thomas & Hafer, LLP**

                                            ***/s/ Matthew R. Clayberger***
                                            Matthew R. Clayberger, Esq.
                                            Counsel for the County Defendants

cc:      Counsel of Record via ECF