## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE PALMER, Administratrix** | : | **Civil No. 1:20-CV-539** |
| **Estate of Everett Palmer, deceased,** | : | |
| | : | |
| **Plaintiff,** | : | **(Judge Rambo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **YORK COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

I.     __Statement of Facts and of the Case__

This case has been referred to us to address outstanding discovery issues. (Doc. 102). One of these pending issues is a motion to compel filed by the plaintiff, seeking disclosure of documents and opposing any confidentiality requirements relating to these discovery disclosures. (Doc. 89).

By way of background, this is a civil rights action brought by Rose Palmer, as the administratrix of the estate of Everett Palmer, who died on April 9, 2018 while in custody at the York County Prison. Palmer has now filed a motion to compel discovery in this case. (Doc. 89). In this motion, Palmer seeks the disclosure of the following six categories of material: (1) Records relating to Mr. Palmer and the events underlying this suit (Request Nos. 1-2); (2) Records relating to the use of spit

hoods, emergency restraint chairs, and TASERs (Request Nos. 3-5, 15-20); (3) Records concerning investigations into the trafficking and use of controlled substances within the York County Prison (Request Nos. 6-7, 13); (4) Records relating to other in-custody deaths at the York County Prison (Request No. 14); (5) Training, personnel, and disciplinary records of individual correctional officers (Request Nos. 8-10); and (6) Records concerning the relationship between the York County Prison and PrimeCare (Request Nos. 21-22).

There seems to be little question that these six categories are potentially relevant to the issues joined in this litigation, and the defendants do not appear to be contesting issues of relevance. The defendants also acknowledge that they have a body of information that they are prepared to produce to the plaintiff. The obstacle to this production, however, seems to be a disagreement regarding whether these materials should be designated as confidential and have their dissemination restricted.

On this issue the parties are at an impasse. The plaintiff refuses to agree to wholesale confidentiality of this information, citing the longstanding principle favoring transparency of judicial proceedings. The defendants, in turn, insist that some degree of confidentiality is necessary in order to avoid prejudicial pretrial publicity which may deny them their right to a fair trial in this case. With the parties' competing views cast in this fashion, the production of this admittedly discoverable

information has been stalled, a discovery delay which inspired the plaintiff to file this motion to compel. The motion is fully briefed and is, therefore, ripe for resolution.

Recognizing the important, but competing, interests expressed by the parties in ensuring transparency of court proceedings while also protecting litigants' rights to a fair and impartial trial, we will resolve this dispute by granting the plaintiff's motion, in part, and prescribing a process for the particularized resolution of any confidentiality requests.

## II.   <u>Discussion</u>

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, the scope of what type of discovery may be compelled is defined by Rule 26(b)(1) of the Federal Rules of Civil Procedure, which provides as follows:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rulings regarding the proper scope of discovery, and the extent to which discovery may be compelled, are matters consigned to the court's discretion and judgment. Thus, it has long been held that decisions regarding motions to compel are "committed to the sound discretion of the district court." DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). Similarly, issues relating to the scope of discovery permitted under Rule 26 also rest in the sound discretion of the Court. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching discretion extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . . , "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under that standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than *de novo* standard); EEOC v.

<u>Mr. Gold, Inc.</u>, 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

<u>Halsey v. Pfeiffer</u>, No. 09-1138, 2010 WL 3735702, *1 (D.N.J. Sept. 17, 2010).

This discretion extends to disputes, like those presented here, relating to whether certain discovery materials should be deemed confidential. Rule 26 prescribes standards for protective orders,[1] standards that emphasize the court's discretion in fashioning discovery relief, and provide as follows:

**(c) Protective Orders.**

**(1) *In General.*** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending -- or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. The motion must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action. The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;
**(B)** specifying terms, including time and place or the allocation of expenses, for the disclosure or discovery;
**(C)** prescribing a discovery method other than the one selected by the party seeking discovery;
**(D)** forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters;

---

[1] In their filings, the defendants have suggested that some of the plaintiff's discovery demands were already fulfilled in prior state court litigation where some sort of confidentiality order had been entered. While this may be so, we believe that we have an independent obligation to assess this question under the standards prescribed by federal law.

**(E)** designating the persons who may be present while the discovery is conducted;

**(F)** requiring that a deposition be sealed and opened only on court order;

**(G)** requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and

**(H)** requiring that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

As the text of Rule 26 implies, the imposition of confidentiality requirements on discovery requires a showing of good cause. In this context, "[g]ood cause is established on a showing that disclosure will work a clearly defined and serious injury to the party seeking disclosure. The injury must be shown with specificity." Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning" will not establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir. 1986). In making this assessment the Third Circuit has instructed us that:

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. Arthur R. Miller, Confidentiality, Protective Orders, and Public Access to the Courts, 105 Harv.L.Rev. 427, 432–33 (1991). The balancing conducted in the discovery context should be applied by courts when considering whether to grant confidentiality orders at any stage of litigation, including settlement:
>
> > [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure

6

[through discovery] cannot be compelled, but this is an infrequent result.

Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7)…. Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.

Id. at 433–35 (footnotes omitted).

Pansy v. Borough of Stroudsburg, 23 F.3d 772, 787 (3d Cir. 1994).

In practice, the following:

factors, which are neither mandatory nor exhaustive, . . . may be considered in evaluating whether "good cause" exists:

1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7

7) whether the case involves issues important to the public.

Glenmede Tr. Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

It is self-evident from these guiding legal benchmarks that informed decision-making in this field calls for the exercise of discretion, balancing an array of often fact-bound and fact-specific considerations. However, in exercising this discretion, courts have suggested a procedural paradigm to follow which would allow for timely production of information, and permit the assertion of confidentiality claims, but ensure that the burden of proving confidentiality rests with the party seeking confidential treatment of certain information.

> Under this approach, the [court's] order would initially protect all documents that the producing party designated in good faith as confidential. After the documents [were] delivered . . . , the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The burden of proof would be at all times on the [party asserting confidentiality]; only the burden of raising the issue with respect to certain documents would shift to the other party.

Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).

This is the path we will follow in the instant case. We will direct that the defendants promptly produce all relevant materials in the possession, custody, and control that are responsive to these outstanding discovery demands, while specifically designating those materials which they deem in good faith to be confidential. Given that injury and prejudice justifying continued confidentiality "must be shown with

specificity," <u>Publicker Indus.,</u> 733 F.2d at 1071, the defendants should refrain from sweeping assertions of confidentiality. Once these materials are produced with certain records designated confidential, the parties shall consult and confer, and the plaintiff may identify those records she believes should not be treated as confidential. It will then fall to the defense to justify a continuing confidentiality designation in accordance with the multi-factor, discretionary standards previously prescribed by the courts.

Having described this procedural approach which we will take to promptly resolve these discovery disputes, an appropriate order follows.

<u>/s/ <i>Martin C. Carlson</i></u>
Martin C. Carlson
United States Magistrate Judge

December   , 2021