IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSE PALMER, ADMINISTRATRIX OF THE ESTATE OF EVERETT PALMER, JR., DECEASED, | : : : : | Civil No. 1:20-CV-539 |
| Plaintiff, | : : | |
| v. | : : | (Judge Rambo) |
| YORK COUNTY, PENNSYLVANIA *et al.*, | : : : | (Magistrate Judge Carlson) |
| Defendants. | : : | |

## MEMORANDUM AND ORDER

### I.   Factual and Procedural Background

This case has been referred to us to address outstanding discovery issues. One of the pending issues is a motion for protective order and motion to quash filed by the defendants seeking the protection of a 2017 Pennsylvania Department of Corrections Report ("2017 Report") and seeking to quash the plaintiff's subpoena for the 2017 Report. (Doc. 105).

By way of background, this is a civil rights action brought by Rose Palmer, as the administratrix of the estate of Everett Palmer, who died on April 9, 2018 while in custody at York County Prison. Palmer served a subpoena on the Pennsylvania Department of Corrections ("DOC") on June 23, 2021 seeking the disclosure of a 2017 report prepared by the DOC detailing various recommendations for the York

1

County Prison. (Doc. 105-2). According to the defendants, the subpoenaed report was initiated in February 2017, when the York County Prison Board requested that the DOC undertake a comprehensive operations and security audit of the York County Prison in preparation for the recruitment of a new warden and the development of a new administration and operation plan. (Doc. 105, ¶ 6).

Following receipt of the subpoena, the defendants filed a letter with the District Court on July 30, 2021 asserting that the 2017 Report is irrelevant and protected by the law enforcement and deliberative process privileges. (Doc. 95). The District Court ordered the defendants to submit the report for *in camera* review and the defendants complied. (Doc. 96). The District Court reviewed the 2017 Report and determined that it was at least minimally relevant to the issues in the litigation, and thereby potentially discoverable, and ordered the parties to formally brief the issue. (Doc. 99). The discovery dispute is now fully briefed and ripe for resolution. (Docs. 105, 106, 107).

The defendants argue that the entirety of the 2017 Report is protected by deliberative process privilege, that the identities of the individuals who participated in the creation of the report are subject to law enforcement investigatory privilege, and that disclosure of the 2017 Report should be protected due to institutional and security concerns. The plaintiff asserts that the information contained in the 2017 Report is relevant to her claim that Mr. Palmer's death was caused by certain

customs, policies, and practices of York County Prison and that the findings of the report will help the plaintiff demonstrate that policymakers were aware of issues relating to these policies and practices and failed to rectify them.

Understanding that this matter involves issues of great importance, both to the parties and the policies which shape this litigation, we have fashioned an order attempting to achieve a balance which will preserve the interests of all stakeholders. We find that these competing interests are best served by the defendants providing certain relevant portions of the 2017 Report, identified below, subject to the redaction of any third-party names, and provided for "attorney eyes only," without prejudice to the plaintiffs returning to request certain portions be approved for appropriate dissemination. Accordingly, the defendants' motion for protective order and motion to quash shall be granted in part and denied in part.

## II. Discussion

### A. Guiding Principles

This motion for protective order calls upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). This far-reaching

discretion also extends to rulings by United States Magistrate Judges on discovery matters. In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes. See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997). When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard." Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)). Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion." Kresefky v. Panasonic Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45 (N.D.N.Y. 1999) (holding that discovery rulings are reviewed under abuse of discretion standard rather than de novo standard); EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a magistrate judge's resolution of discovery disputes deserves substantial deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles. At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines the scope of discovery permitted in a civil action, and prescribes certain limits to that discovery, providing as follows:

> (b) Discovery Scope and Limits.
>
> (1) *Scope in General*. Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Thus, our discretion is limited in a number of significant ways by the scope of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in ruling on discovery issues is, therefore, restricted to valid claims of relevance and privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

### B. The Court's Protocol for the 2017 Report

Guided by these discovery principles, our task in the instant matter is first to address the relevance of the requested discovery information and then determine whether a privilege applies that would prevent the Court from ordering its disclosure. As to the relevance of the information contained in the report, in a November 30, 2021 order, (Doc. 99), the District Court found, after reviewing the 2017 Report and considering the parties' respective positions, that the 2017 Report is at least

5

minimally relevant to the issues in this litigation and is potentially discoverable. Accordingly, the Court instructed the parties to formally brief the issue based on privilege. Thus, on this score, we simply note that, based on our own *in camera* review, portions of the 2017 Report are discoverable based on their relevance to the plaintiff's allegations that Mr. Palmer's death was caused by certain customs, policies, and practices of York County relating to the protocols surrounding the use of excessive force, the policies, training, and supervision relating to the care and treatment of individuals with mental health issues and those on suicide watch, the training of individuals on the CERT team for cell extractions, and the policies relating to drug trafficking within York County prison.

We are also cognizant of the fact that the 2017 Report addresses many topics relating to the operations of York County Prison which are outside the scope of discovery under Rule 26. Those portions would be subject to redaction prior to disclosure to plaintiff's counsel. In our view, the following portions of the 2017 Report are relevant under Rule 26[1]:

- York County: Interviews, Opinions, and Recommendations; Counseling Staff Summary of Concerns; May 12, 2017 (4 pages)
- York County Overview of Mental Health Services; referencing March

---

[1] The Report provided to the Court for *in camera* review lacks consistent page numbers, tabs, or Bates numbers, and thus we have attempted to refer to the relevant sections by description.

15, 2017 tour of York County Prison (6 pages)

- York County Prison Medical Department Review; March 28, 2017 (3 pages)

- The following portions of December 27, 2017 Summary Report: Overview of the York County Prison Operations:

    o Key Themes of the Overview (Pages 5-11)

    o Section 6: Staff Training Recommendations (Pages 14-16)

    o Section 8: Offender Treatment Services (Pages 20-21)

    o Section 9: Mental Health Services (Page 21)[2]

    o York County Prison Operations Overview Organizational Assessment CONFIDENTIAL (3 pages)

    o Focus Group Meetings with Corrections Officers Major Issues CONFIDENTIAL (2 pages)

- After Action Report for General Search; Executive Summary; May 5, 2017 (6 pages)

The balance of the 2017 Report other than that identified above shall be redacted by

---

[2] Sections 8 and 9 reference Appendices E and F, respectively. Due to the previously discussed organizational nature of the document presented for the Court's *in camera* review, it is unclear to what appendices this is referring. To the extent that there are portions of the report that have not been included, we ask the defendants to identify and produce them for further *in camera* review. Otherwise, we assume the referenced appendices are encompassed within the previously identified overviews and recommendations.

the defendants prior to production to the plaintiff.

The scope of discoverable information from the 2017 Report is also limited by the defendants' assertion of privilege, as "[c]ourts will not permit discovery where a request . . . relates to confidential or privileged information." Jackson, 2014 WL 3868228, at *5. On this score, the defendants have filed the instant protective order asserting the entirety of the 2017 Report is protected by deliberative process privilege, the identities of the individuals who participated in the creation of the report are subject to law enforcement investigatory privilege, and further alleging that institutional and security concerns outweigh the plaintiff's need for the information. In our view, all of these concerns are most appropriately addressed by proper redaction, including limiting disclosure to only the sections identified above and redacting all third-party names, and by limiting the disclosure for "attorney eyes only," without prejudice to plaintiff requesting certain portions be subject to appropriate dissemination upon approval of the Court.

The defendants first argue the 2017 Report is protected by deliberative process privilege, which the Supreme Court has characterized as, "a form of executive privilege [which] rests on 'the policy of protecting the decision-making processes of government agencies.'" Beckwith v. Blair Cty., No. 3:18-CV-40, 2019 WL 343248 at *5 (W.D. Pa. Jan. 28, 2019) (quoting N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132 (1975)). Deliberative process privilege:

> Protects pre-decisional communications that 'reflect[ ] advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.' Factual material is not protected as long as it is severable from the deliberative information, even if the factual information is located in an otherwise privileged document.

Id. (citing N.L.R.B. at 150; Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 854 (3d Cir. 1995); In re Grand Jury, 821 F.2d 946, 959 (3d Cir. 1987); Smith v. Rogers, Case No. 3:15-cv-264, 2017 WL 2937957, at *3 (W.D. Pa. July 10, 2017)) (citations omitted).

The Third Circuit views the issue of deliberative process privilege as follows:

> The deliberative process privilege permits the government to withhold documents containing "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice." In re Grand Jury, 821 F.2d 946, 959 (3d Cir.1987) (citing NLRB v. Sears Roebuck & Co., 421 U.S. 132, 150–54, 95 S.Ct. 1504, 1516–18, 44 L.Ed.2d 29 (1975); EPA v. Mink, 410 U.S. 73, 89 & n. 16, 93 S.Ct. 827, 836–37 & 16, 35 L.Ed.2d 119 (1973)), cert. denied sub. nom., Colafella v. United States, 484 U.S. 1025, 108 S.Ct. 749, 98 L.Ed.2d 762 (1988).
>
> "[T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions." Sears, Roebuck & Co., 421 U.S. at 151, 95 S.Ct. at 1516. It recognizes "that were agencies forced to operate in a fishbowl, the frank exchange of ideas and opinions would cease and the quality of administrative decisions would consequently suffer." First Eastern Corp. v. Mainwaring, 21 F.3d 465, 468 (D.C.Cir.1994) (quotations and internal ellipses omitted). The deliberative process privilege does not protect factual information, even if such information is contained in an otherwise protectable document, as long as the information is severable. See In re Grand Jury, 821 F.2d at 959. In addition, it does not protect "[c]ommunications made subsequent to an agency decision." United States v. Farley, 11 F.3d 1385, 1389 (7th Cir.1993).

> The privilege, once determined to be applicable, is not absolute. First Eastern Corp., 21 F.3d at 468 n. 5; *Farley,* 11 F.3d at 1389. After the government makes a sufficient showing of entitlement to the privilege, the district court should balance the competing interests of the parties. The party seeking discovery bears the burden of showing that its need for the documents outweighs the government's interest. This Court has previously stated that "the party seeking disclosure may overcome the claim of privilege by showing a sufficient need for the material in the context of the facts or the nature of the case ... or by making a *prima facie* showing of misconduct." In re Grand Jury, 821 F.2d at 959 (internal citations omitted). The United States Court of Appeals for the District of Columbia, recently determined that a district court, in balancing the interests, should consider at least the following factors: "(i) the relevance of the evidence sought to be protected; (ii) the availability of other evidence; (iii) the 'seriousness' of the litigation and the issues involved; (iv) the role of the government in the litigation; [and] (v) the possibility of future timidity by government employees who will be forced to recognize that their secrets are violable." First Eastern Corp., 21 F.3d at 468 n. 5.
>
> Thus, a party's assertion of the deliberative process privilege requires a two-step review in the district court. First, it must decide whether the communications are in fact privileged. Second, the court must balance the parties' interests.

Redland Soccer Club, Inc. v. Dep't of Army of U.S., 55 F.3d 827, 853–54 (3d Cir. 1995).

As to the first step of deciding whether the communications are privileged, "[t]he initial burden of showing privilege applies is on the government. . . . To meet it, the government must present more than a bare conclusion or statement that the documents sought are privileged." Id. at 854 (citing Schreiber v. Society for Savings Bancorp., 11 F.3d 217, 221 (D.C.Cir.1993). To invoke the privilege, the government

10

must: "(1) personally review the purportedly privileged documents; (2) identify and specifically describe the documents; and (3) give 'precise and certain reasons,' usually through an affidavit, for the privilege's applicability. Beckwith v. Blair Cty., No. 3:18-CV-40, 2019 WL 343248, at *6 (W.D. Pa. Jan. 28, 2019) (citing United States v. O'Neill, 619 F.2d 222, 226 (3d Cir. 1980)) (citations omitted).

The defendants have properly invoked the deliberative process privilege, having provided an affidavit by York County Commissioner Doug Hoke, (Doc. 105-3), which indicates he personally reviewed the documents, identifies and describes the report, and gives precise and certain reasons for the applicability of the privilege. Mr. Hoke attests that the 2017 Report falls under the privilege because it contains advisory recommendations which were used to improve the correctional facility's operations in preparation for the search for a new warden. (Id., ¶¶ 6, 7). He further avers that disclosure of the report would "cause a number of operational-related and policy-related concerns," including exposing the vulnerabilities of the reviewed processes, the security concerns relating to the dissemination of the findings to the general public, and the confidential nature of operational procedures such as staffing allocation, security needs, movement of inmates, surveillance camera coverage, and escape possibilities. (Id., at ¶ 21).

The plaintiff argues that deliberative process privilege does not apply to the interviews conducted, facts gathered, and conclusions developed by the

11

Pennsylvania Department of Corrections in the 2017 Report because they constitute "factual material . . . [that] is severable from the deliberative material." Smith at *3. We do note that, after reviewing the document, much of the relevant materials are advisory recommendations which were used to improve the correctional facility's operations in preparation for the search for a new warden. (Id., ¶¶ 6, 7). In our view, this is precisely the type of "confidential deliberations of law or policymaking, reflecting opinions, recommendations or advice," that the privilege seeks to protect. Redland at 853. Further, it would be impractical to sever the factual findings from the recommendations due to the nature of the limited portions of the report we have identified as relevant.

Thus, having properly invoked the privilege, we endeavor to balance the interests of the parties to determine if the plaintiff's need for the limited portions of the 2017 Report identified above outweighs the government's interest in protecting them from disclosure. We find the plaintiff's need for such information, given the serious nature of the allegations, outweigh the government's interest in protecting the relevant portions of the report, particularly given the Court's directed safeguards in disclosing the documents.

We have already determined the relevance of the portions of the report identified above, as the information contained in the 2017 Report involves advisory opinions and recommendations relating to the customs, policies, and practices of

12

York County prison which the plaintiff alleges caused the death of Mr. Palmer. The fact that the report was prepared prior to Mr. Palmer's incarceration has no bearing on its relevance, as it was temporally proximate to the incident and could demonstrate, as plaintiff points out, the awareness and compliance of the institution to policy recommendations prior to Mr. Palmer's death. Further, the subject matter of the litigation is gravely serious, and weighs heavily in favor of disclosure, as the litigation involves issues of mental health services, drug trafficking within the prison, and the death of an inmate.

As to whether other evidence exists, the plaintiff could demonstrate defective policies and procedures using an expert, however it is unclear to us precisely how such an expert could demonstrate knowledge and acquiescence specific to York County Prison and the recommendations for improvements of its policies and procedures directly preceding Mr. Palmer's death. Most importantly, the factor weighing most heavily in favor of the defendants, the possibility of future timidity by government employees who will be forced to recognize their secrets are voidable, is remedied by the report being disclosed for "attorney eyes only" with third party redactions. We are sensitive to the defendants' concerns, as pointed out in Mr. Hoke's affidavit, that disclosure of the report could deter staff from future participation in such evaluations, and the prison board from engaging in future voluntary self-evaluations. However, given the limited nature of the disclosure

authorized and the redaction of any identification of third parties involved in the creation of the report, we do not find this concern outweighs the plaintiff's interest in access to its relevant portions.

Nothing in the jurisprudence governing the invocation of deliberative process privilege requires the all or nothing approach that the defendants suggest here in seeking a protective order of the 2017 Report in its entirety. In fact, in Beckwith, which the defendants heavily rely upon in their argument, the plaintiff was seeking to compel production of an *unredacted* DOC report, a redacted version had already been provided. On this score, the "precise and certain reasons" for the privilege's applicability described by the defendant are not applicable to the entirety of the report, and, notably, not applicable to many of the relevant portions requested by the plaintiff. Specifically, Mr. Hoke's concerns relate to security, movement of inmates, surveillance camera coverage, escape possibilities, and the physical layout of the York County Prison, none of which are discussed or addressed in the relevant portions identified above. Further, the concerns raised by the defendants regarding security and the chilling effect risked by disclosure of the report to the public can be remedied by an order granting disclosure of the report for "attorney eyes only."

Similarly, we find the limited nature of the disclosure authorized by this court addresses the defendants concerns regarding the law enforcement investigatory privilege, which has been identified as an executive privilege that "prevent[s]

disclosure of certain information whose disclosure would be contrary to the public interest," particularly in the context of internal police investigations. Frankenhauser v. Rizzo, 59 F.R.D. 339, 342 (E.D. Pa. 1973). The privilege endeavors to prevent a "'chilling effect' upon [] department[s] [that] would impede candid and conscientious self-evaluation of actions of the department," Id. at 342, and requires balancing "the public interest in the confidentiality of governmental information against the needs of a litigant to obtain data, not otherwise available to him, with which to pursue a non-frivolous cause of action." Id. at 344. The balancing test from Frankenhauser employs ten factors in determining whether the privilege prevents disclosure. Id.

  We do not find it necessary to deploy the Frankenhauser test at this juncture, as the defendants seemingly only seek to assert this privilege to protect the identities of the individuals who participated in the creation of the 2017 Report, a request easily remedied by the redaction of all third-party names included in the report. This is a remedy to which the plaintiff has indicated in her brief she is amenable, and is supported by the remedy in Beckwith, the case upon which the defendants heavily rely in their assertion of the privilege. Beckwith at *5.

  We also believe the limited nature of the ordered disclosure should quell the defendants' concerns regarding the institutional and security concerns raised by the disclosure of the 2017 Report. The defendants specifically point to findings

15

regarding "operational aspects of the York County Prison such as staffing allocation, security needs, movement of inmates, surveillance camera coverage, and escape possibilities" that inmates could use to their advantage against correctional officers, leading to vulnerabilities and risks to prison staff and inmates. (Doc. 106, at 13). We agree these are grave concerns. However, in our view, after careful consideration of the report and its findings, there is nothing in the relevant portions of the 2017 Report identified above that would expose such vulnerabilities. Further, the limitation of disclosure to "attorney eyes only" would expressly prohibit disclosure of any portions of the report to the public, eliminating the risk that inmates would become privy to any specific information from the 2017 Report.

We are sensitive to the delicate nature of the instant motion, which requires balancing the privacy of internal institutional evaluations, and the importance of such evaluations occurring, with the discovery rights of the plaintiff in a case involving the in-custody death of Mr. Palmer, a serious incident in which the Court, and members of the public, have a compelling interest. Acknowledging these competing interests, we have endeavored to arrive at a solution which serves both interests while moving this litigation forward in a timely manner. Accordingly, the defendants shall produce to the plaintiff only the portions of the report identified above, redacting the names of any third parties involved in the creation of the report,

and marking it for "attorney eyes only," without prejudice to plaintiffs returning to request portions of the report be appropriately disseminated.

    An appropriate order follows.


DATED: February 25, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROSE PALMER, ADMINISTRATRIX OF THE ESTATE OF EVERETT PALMER, JR., DECEASED, | : : : : | Civil No. 1:20-CV-539 |
| Plaintiff, | : : | |
| v. | : : | (Judge Rambo) |
| YORK COUNTY, PENNSYLVANIA *et al.*, | : : : | (Magistrate Judge Carlson) |
| Defendants. | : : | |

## ORDER

AND NOW, this 25th day of February 2022, in accordance with the accompanying Memorandum, with respect to the parties' dispute regarding the disclosure of the 2017 DOC Report, IT IS ORDERED as follows:

The defendant shall immediately produce to the plaintiff the following portions of the 2017 DOC Report:

- York County: Interviews, Opinions, and Recommendations; Counseling Staff Summary of Concerns; May 12, 2017 (4 pages)

- York County Overview of Mental Health Services; referencing March 15, 2017 tour of York County Prison (6 pages)

- York County Prison Medical Department Review; March 28, 2017 (3 pages)

- The following portions of December 27, 2017 Summary Report: Overview of the York County Prison Operations:
    - Key Themes of the Overview (Pages 5-11)
    - Section 6: Staff Training Recommendations (Pages 14-16)
    - Section 8: Offender Treatment Services (Pages 20-21)
    - Section 9: Mental Health Services (Page 21)
    - York County Prison Operations Overview Organizational Assessment CONFIDENTIAL (3 pages)
    - Focus Group Meetings with Corrections Officers Major Issues CONFIDENTIAL (2 pages)
- After Action Report for General Search; Executive Summary; May 5, 2017 (6 pages)

IT IS FURTHER ORDERED that prior to the production of the above portions of the 2017 DOC Report, the defendants shall redact the names of any third parties included in the report.

IT IS FURTHER ORDERED that the disclosure of this document shall be for attorney eyes only and shall not be disseminated to any party other than the plaintiff attorneys without explicit permission from the Court. This is without prejudice to plaintiffs returning to request portions of the report be appropriately disseminated.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge