**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROSE PALMER, Administratrix** | : | **Civil No. 1:20-CV-539** |
| **Estate of Everett Palmer, deceased,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **YORK COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

**MEMORANDUM AND ORDER**

**I.**   **Statement of Facts and of the Case**

This case comes before us to address several outstanding discovery issues. One of these pending issues is a motion filed by the plaintiff, seeking vacate the designation by the defense of certain discovery materials as confidential. (Doc. 123). For the reasons set forth below, this motion is denied without prejudice to renewal as this case proceeds forward.

By way of background, this is a civil rights action brought by Rose Palmer, as the administratrix of the estate of Everett Palmer, who died on April 9, 2018 while in custody at the York County Prison. The parties have been engaged in an occasionally contentious course of discovery since this litigation commenced.  As part of this discovery, on December 16, 2021 we ordered the defendants to:

> [P]roduce all relevant materials in the possession, custody, and control
> that are responsive to the plaintiff's outstanding discovery requests,
> while specifically designating those materials which they deem in good
> faith to be confidential. Given that injury and prejudice justifying
> continued confidentiality "must be shown with specificity," Publicker
> Indus., 733 F.2d at 1071, the defendants should refrain from sweeping
> assertions of confidentiality.

(Doc. 104).

The defendants complied with this directive and we are informed that: "On January 7th, York County produced 70,606 bates stamped pages of responsive documents and more than 100 hours of video. Of these materials, York County designated 39,986 pages confidential as well as all 100+ hours of video." (Doc. 124 at 2).

In order to timely address these designation issues, we had set several deadlines in January and June of 2022 for the plaintiff to object to these confidentiality designations, but received no such objections. (Docs. 104, 117). Accordingly, in an effort to draw discovery to a close in this matter, on July 14, 2022, we entered yet another set of orders, which included an order directing parties to file any remaining motions to compel on or before August 1, 2022. (Doc. 121).

In response to this last directive, the plaintiff has now filed the instant motion challenging the confidentiality designations made by the defense in this case and seeking to vacate a number of those designations. (Doc. 123). Specifically, Ms. Palmer seeks the following relief in this motion:

Plaintiff seeks to vacate the confidential designation of the following materials:

1. All surveillance video

2. In-custody death investigations (YCP2382-YCP2679, YCP70000-YCP70297)

3. Suicide Prevention Policies (YCP0163-YCP0-178, YCP69561-YCP69620)

4. CERT Policies (YCP69086-YCP69101, YCO69106-YCP69126)

5. Use of Force Policies (YCP0179-YCP0182, YCP69650-YCP69665, YCP6978- YCP69779)

6. ERC Policies and training materials (YCP69138-YCP69236, YCP69334-YCP69356, YCP69640-YCP69649, YCP69816-YCP69830).

(Doc. 124, at 3-4).

The defendants have opposed these requests citing institutional security issues, third-party privacy interests, and concerns regarding potentially prejudicial pre-trial publicity. This motion is now fully briefed by the parties and is, therefore, ripe for resolution. Recognizing the important, but competing, interests expressed by the parties in ensuring transparency of court proceedings while also protecting litigants' rights to a fair and impartial trial, we will resolve this dispute by denying the plaintiff's motion to vacate these confidentiality designations at this time, but we do so without prejudice to further consideration of this issue as this case proceeds to trial and discovery materials are identified as exhibits in that trial.

## II.   **Discussion**

As we consider this motion, it is important at the outset to recognize what *is not* at issue here. This discovery dispute does not involve the plaintiff's right of access to relevant, discoverable information. The plaintiff has already received all of this information. Nor does this motion present a question regarding what information should be publicly accessible in the trial of this case. That issue, which involves a fundamentally different balancing of interests, will be decided on another day. Rather, today, in this motion, we are merely invited to make a determination regarding whether good cause exists for the defendants to designate certain discovery material confidential.

Several basic guiding principles inform our resolution of the instant discovery dispute. At the outset, rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. Wisniewski v. Johns-Manville Corp., 812 F.2d 81, 90 (3d Cir. 1987); DiGregorio v. First Rediscount Corp., 506 F.2d 781, 788 (3d Cir. 1974). This discretion extends to disputes, like those presented here, relating to whether certain discovery materials should be deemed confidential. Rule 26 prescribes standards for protective orders, standards that emphasize the court's discretion in fashioning discovery relief, and provide as follows:

**(c) Protective Orders.**

**(1) *In General.*** A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending

4

-- or as an alternative on matters relating to a deposition, in the court for
the district where the deposition will be taken. The motion must include
a certification that the movant has in good faith conferred or attempted
to confer with other affected parties in an effort to resolve the dispute
without court action. The court may, for good cause, issue an order to
protect a party or person from annoyance, embarrassment, oppression,
or undue burden or expense, including one or more of the following:

**(A)** forbidding the disclosure or discovery;
**(B)** specifying terms, including time and place or the allocation of
expenses, for the disclosure or discovery;
**(C)** prescribing a discovery method other than the one selected by the
party seeking discovery;
**(D)** forbidding inquiry into certain matters, or limiting the scope of
disclosure or discovery to certain matters;
**(E)** designating the persons who may be present while the discovery is
conducted;
**(F)** requiring that a deposition be sealed and opened only on court order;
**(G)** requiring that a trade secret or other confidential research,
development, or commercial information not be revealed or be revealed
only in a specified way; and
**(H)** requiring that the parties simultaneously file specified documents or
information in sealed envelopes, to be opened as the court directs.

Fed. R. Civ. P. 26(c).

As the text of Rule 26 implies, the imposition of confidentiality requirements
on discovery requires a showing of good cause. In this context, "[g]ood cause is
established on a showing that disclosure will work a clearly defined and serious injury
to the party seeking disclosure. The injury must be shown with specificity." Publicker
Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984). "Broad allegations of
harm, unsubstantiated by specific examples or articulated reasoning" will not
establish good cause. Cipollone v. Liggett Group, Inc., 785 F.2d 1108, 1121 (3d Cir.

1986). In making this assessment the Third Circuit has instructed us that:

> In considering whether good cause exists for a protective order, the federal courts have generally adopted a balancing process. Arthur R. Miller, <u>Confidentiality, Protective Orders, and Public Access to the Courts</u>, 105 Harv.L.Rev. 427, 432–33 (1991). The balancing conducted in the discovery context should be applied by courts when considering whether to grant confidentiality orders at any stage of litigation, including settlement:
>
> > [T]he court ... must balance the requesting party's need for information against the injury that might result if uncontrolled disclosure is compelled. When the risk of harm to the owner of [a] trade secret or confidential information outweighs the need for discovery, disclosure [through discovery] cannot be compelled, but this is an infrequent result.
> >
> > Once the court determines that the discovery policies require that the materials be disclosed, the issue becomes whether they should "be disclosed only in a designated way," as authorized by the last clause of Rule 26(c)(7).... Whether this disclosure will be limited depends on a judicial balancing of the harm to the party seeking protection (or third persons) and the importance of disclosure to the public. Courts also have a great deal of flexibility in crafting the contents of protective orders to minimize the negative consequences of disclosure and serve the public interest simultaneously.
>
> <u>Id</u>. at 433–35 (footnotes omitted).

<u>Pansy v. Borough of Stroudsburg</u>, 23 F.3d 772, 787 (3d Cir. 1994).

> In practice, the following:
>
> factors, which are neither mandatory nor exhaustive, . . . may be considered in evaluating whether "good cause" exists:
>
> 1) whether disclosure will violate any privacy interests;

2) whether the information is being sought for a legitimate purpose or for an improper purpose;

3) whether disclosure of the information will cause a party embarrassment;

4) whether confidentiality is being sought over information important to public health and safety;

5) whether the sharing of information among litigants will promote fairness and efficiency;

6) whether a party benefitting from the order of confidentiality is a public entity or official; and

7) whether the case involves issues important to the public.

Glenmede Tr. Co. v. Thompson, 56 F.3d 476, 483 (3d Cir. 1995).

It is self-evident from these guiding legal benchmarks that informed decision-making in this field calls for the exercise of discretion, balancing an array of often fact-bound and fact-specific considerations. However, in exercising this discretion, courts have suggested a procedural paradigm to follow which would allow for timely production of information, and permit the assertion of confidentiality claims, but ensure that the burden of proving confidentiality rests with the party seeking confidential treatment of certain information.

Under this approach, the [court's] order would initially protect all documents that the producing party designated in good faith as confidential. After the documents [were] delivered . . . , the opposing party could indicate precisely which documents it believed to be not confidential, and the movant would have the burden of proof in justifying the protective order with respect to those documents. The

7

> burden of proof would be at all times on the [party asserting confidentiality]; only the burden of raising the issue with respect to certain documents would shift to the other party.

Cipollone v. Liggett Grp., Inc., 785 F.2d 1108, 1122 (3d Cir. 1986).

Further, the nature and stage of the proceedings, as well as the characterization of the materials identified as confidential, is also highly relevant to this analysis. In this regard:

> The highest level of judicial scrutiny attaches to a request to seal an actual civil trial. Because trials are subject to the First Amendment right of public access to judicial proceedings, a request to bar access to a civil trial "is ... evaluated under strict scrutiny." Id. at 673 (quoting PG Pub. Co. v. Aichele, 705 F.3d 91, 98 (3d Cir. 2013)) (internal quotation marks omitted). To determine whether the First Amendment right of access attaches, courts consider two prongs: "(1) the experience prong asks 'whether the place and process have historically been open to the press'; and (2) the logic prong evaluates 'whether public access plays a significant positive role in the functioning of the particular process in question.' " Id. (quoting N. Jersey Media Grp. Inc. v. United States, 836 F.3d 421, 429 (3d Cir. 2016). "The party seeking closure or sealing in the face of the First Amendment right of access 'bears the burden of showing that the material is the kind of information that courts will protect and that there is good cause for the order to issue.' " Id. (quoting Publicker Indus., Inc. v. Cohen, 733 F.2d 1059, 1071 (3d Cir. 1984)). "Good cause means 'that disclosure will work a clearly defined and serious injury to the party seeking closure'; '[t]he injury must be shown with specificity.' " Id.

> The lowest level of scrutiny attaches to requests to preserve, or to continue to preserve, the confidentiality of discovery materials pursuant to a protective order under Federal Rule of Civil Procedure 26. Id. at 670. Under Rule 26, a litigant must demonstrate "good cause" before a protective order may be granted which either renders certain information or documents undiscoverable by an opposing party or which seals information or documents that have already been exchanged. FED.R.CIV.P. 26(c)(1) ("The court may, for good cause,

> issue an order to protect a party or person from annoyance,
> embarrassment, oppression, or undue burden or expense."). To
> demonstrate good cause, a movant must show "that disclosure will work
> a clearly defined and serious injury to the party seeking [to prevent]
> disclosure." <u>Publicker Indus.</u>, 733 F.2d at 1071. "The injury must be
> shown with specificity." <u>Id</u>. "Broad allegations of harm, unsubstantiated
> by      specific      examples      or      articulated      reasoning"      are
> insufficient. <u>Cipollone v. Liggett Group, Inc.</u>, 785 F.2d 1108, 1121 (3d
> Cir. 1986).

<u>Dobson v. Milton Hershey Sch.</u>, 434 F. Supp. 3d 224, 232–33 (M.D. Pa. 2020).

Thus, in the instant case, where are are asked solely to consider the designation of discovery materials as confidential, the lowest level of scrutiny, Rule 26's good cause standard, applies. Applying this benchmark, we conclude at this time that good cause exists to treat the prison videos, prison policies, and other unrelated in-custody fatality reports as confidential.

Turning first to the defendants' production of records relating to other inmate in-custody fatalities, while this potentially relevant information has been produced to the plaintiff under a confidentiality designation, we agree that the public release of these reports would invade the privacy interests of those other decedents and their families in ways which would be particularly intrusive and inappropriate. Moreover, in a correctional context we have long declined similar discovery invitations relating to third party prisoners, finding that such disclosures "unduly infring[e] upon the privacy interests of other inmates." <u>Allen v. Eckard</u>, No. 1:17-CV-996, 2019 WL 1099001, at *3 (M.D. Pa. Mar. 8, 2019) (collecting cases); <u>Moore v. Mann</u>, No. 3:13-

CV-2771, 2017 WL 1386215, at *3 (M.D. Pa. Apr. 18, 2017); <u>Mercaldo v. Wetzel</u>, No. 1:13-CV-1139, 2016 WL 5851958, at *5 (M.D. Pa. Oct. 6, 2016). Accordingly, at this juncture we believe that these third party privacy interests provide sufficient good cause to justify the continued designation of this information as confidential.

As for the various prison policies and prison videos, the defendants have provided Palmer with complete access to this information but assert that the public disclosure of this information could undermine important institutional security interests. Therefore, the defendants seek a continued designation of these policies and videos as confidential on institutional security grounds.

We agree. In a prison setting, requests for information relating to security procedures can raise security concerns, and implicate a legitimate governmental privilege. Indeed, in related discovery settings, federal courts in Pennsylvania have frequently sustained objections to the disclosure of similar institutional policy manuals, citing the obvious concerns for institutional security which the dissemination of such policies could create. <u>Mercaldo v. Wetzel</u>, No. 1:13-CV-1139, 2016 WL 5851958, at *3 (M.D. Pa. Oct. 6, 2016) (collecting cases); <u>Robinson v. Wetzel</u>, No. 3:11-CV-2194, 2013 WL 5202489, at *3 (M.D. Pa. Sept. 13, 2013). Therefore, while the plaintiff has untrammeled access to this information as she prepares her case, there remain legitimate security considerations which caution against wholesale dissemination of this information and provide good cause

for the designation of these policies as confidential. Likewise, while the plaintiff has been provided access to prison surveillance videos, presently those videos—which would also reveal the location and capabilities of prison surveillance cameras— contain "information [which] could compromise the security and safety of the institution for inmates, visitors and staff." <u>Milhouse v. Gee</u>, No. 1:CV-09-2134, 2012 WL 3150580, at *3 (M.D. Pa. Aug. 2, 2012). Therefore, during the discovery phase of this litigation, good cause exists to continue to designate this information as confidential.

Yet, while we decline at this time to set aside any of these confidentiality designations, finding that good cause exists to designate these materials as confidential, we hasten to add that as this case moves from discovery proceedings to trial, the burden of maintaining continued confidentiality of evidence which will be presented at trial is heightened, and courts demand a more exacting justification for treating trial evidence as confidential and not subject to public disclosure. Therefore, we will deny the request to vacate these confidentiality disclosures at this time, but without prejudice to re-visiting this issue at the time of pre-trial and trial proceedings with respect to any items previously designated as confidential which may be presented as evidence at trial.

An appropriate order follows.

/s/ *Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

September 9th 2022

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROSE PALMER, Administratrix** | : | **Civil No. 1:20-CV-539** |
| **Estate of Everett Palmer, deceased,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **YORK COUNTY, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW this 9th day of September 2022, in accordance with the accompanying Memorandum Opinion, IT IS ORDERED THAT the plaintiff's motion to vacate confidentiality designations, (Doc. 123) is DENIED without prejudice to re-visiting this issue at the time of pre-trial and trial proceedings with respect to any items previously designated as confidential which may be presented as evidence at trial.

*s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge