## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROSE PALMER, ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF EVERETT** | : | |
| **PALMER, JR., DECEASED,** | : | **Civil No. 1:20-CV-539** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **YORK COUNTY, PENNSYLVANIA** | : | |
| *et al.,* | : | |
| | : | |
| **Defendants.** | : | |

## MEMORANDUM AND ORDER

### I.   Factual and Procedural Background

This case comes before us to address outstanding discovery issues. One of the pending issues is a motion to compel filed by the plaintiff seeking the production of materials by Defendant PrimeCare Medical, Inc. ("PrimeCare") as requested by the plaintiffs during discovery. (Doc. 122).

By way of background, this is a civil rights action brought by Rose Palmer, as the administratrix of the estate of Everett Palmer, who died on April 9, 2018, while in custody at York County Prison. The plaintiff's motion follows a discovery dispute regarding the production made by Defendant PrimeCare in response to a request for production of documents served by the plaintiff on May 12, 2021. (Doc. 122-1). According to the plaintiff, the defendant responded to the request with objections

1

and a limited and redacted production of the requested documents. Despite the parties conferring multiple times to resolve the dispute, the plaintiff indicates a number of issues remain.

The plaintiff avers that Request Nos. 2, 7, 8, 9, 10, 13, 15, 16, and 17 received an objection or inadequate response from the defendant and moves the Court to compel their full, unredacted production. First, the plaintiff contests the defendant's response to her requests for materials related to any investigation into the screening, treatment, and/or death of Everett Palmer Jr. and any investigation in any way related to Everett Palmer, (Doc. 122-1, Request Nos. 2, 13, 15, 16, 17), stating that such documents were not discoverable due to "self-critical analysis" privilege. The plaintiff also takes issue with the significant redaction to the materials provided which reflect the number of inmates at York County Prison referred to outside medical, psychological, or psychiatric service providers and the basis for such referrals as well as the employment, disciplinary, and training records related to the medical providers employed by PrimeCare and its policies on certain topics. (Id., Request Nos. 7-10). The plaintiff also requests we compel the production of all communications or documents reflecting concerns related to the provision of mental health care to inmates, (Id., Request Nos. 14-17), to which the defendant has objected as overbroad and unduly burdensome. Finally, the plaintiff moves this Court to compel the requested healthcare records in their original source format so

that audit and access trails may be analyzed.

Keeping in mind the balancing interests at stake in the rules governing discovery, the plaintiff's motion to compel shall be granted in part and denied in part.

## II.  Discussion

### A. Guiding Principles

This motion to compel calls upon the Court to exercise its authority under Rule 26 of the Federal Rules of Civil procedure to regulate discovery in this case. Rulings regarding the proper scope of discovery are matters consigned to the court's discretion and judgment. A court's decisions regarding the conduct of discovery will be disturbed only upon a showing of abuse of that discretion. Marroquin-Manriquez v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983).  This far-reaching discretion also extends to rulings by United States Magistrate Judges on discovery matters.  In this regard:

> District courts provide magistrate judges with particularly broad discretion in resolving discovery disputes.  See Farmers & Merchs. Nat'l Bank v. San Clemente Fin. Group Sec., Inc., 174 F.R.D. 572, 585 (D.N.J. 1997).   When a magistrate judge's decision involves a discretionary [discovery] matter . . ., "courts in this district have determined that the clearly erroneous standard implicitly becomes an abuse of discretion standard."  Saldi v. Paul Revere Life Ins. Co., 224 F.R.D. 169, 174 (E.D. Pa. 2004) (citing Scott Paper Co. v. United States, 943 F. Supp. 501, 502 (E.D. Pa. 1996)).  Under the standard, a magistrate judge's discovery ruling "is entitled to great deference and is reversible only for abuse of discretion."   Kresefky v. Panasonic

Commc'ns and Sys. Co., 169 F.R.D. 54, 64 (D.N.J. 1996); see also
Hasbrouck v. BankAmerica Hous. Servs., 190 F.R.D. 42, 44-45
(N.D.N.Y. 1999) (holding that discovery rulings are reviewed under
abuse of discretion standard rather than de novo standard); EEOC v.
Mr. Gold, Inc., 223 F.R.D. 100, 102 (E.D.N.Y. 2004) (holding that a
magistrate judge's resolution of discovery disputes deserves substantial
deference and should be reversed only if there is an abuse of discretion).

Halsey v. Pfeiffer, No. 09-1138, 2010 WL 2735702, at *1 (D.N.J. Sept. 27, 2010).

The exercise of this discretion is guided, however, by certain basic principles.
At the outset, Rule 26(b) of the Federal Rules of Civil Procedure generally defines
the scope of discovery permitted in a civil action, and prescribes certain limits to that
discovery, providing as follows:

(b) Discovery Scope and Limits.

(1) *Scope in General*. Unless otherwise limited by court order, the scope
of discovery is as follows: Parties may obtain discovery regarding any
nonprivileged matter that is relevant to any party's claim or defense and
proportional to the needs of the case, considering the importance of the
issues at stake in the action, the amount in controversy, the parties'
relative access to relevant information, the parties' resources, the
importance of the discovery in resolving the issues, and whether the
burden or expense of the proposed discovery outweighs its likely
benefit. Information within this scope of discovery need not be
admissible in evidence to be discoverable.

Thus, our discretion is limited in a number of significant ways by the scope
of Rule 26 itself, which provides for discovery of only "nonprivileged matter that is
relevant to any party's claim or defense." Therefore, "[t]he Court's discretion in
ruling on discovery issues is, therefore, restricted to valid claims of relevance and
privilege." Robinson v. Folino, No. 14-227, 2016 WL 4678340, at *2 (citing Jackson

v. Beard, No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) ("[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits. . . . Courts will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relates to confidential or privileged information")).

One other immutable factor governs the scope of discovery under Rule 26. "It is an obvious truism that a court should not enter an order compelling a party to produce documents where the documents do not exist." Wells v. JPC Equestrian, Inc., No. 3:13-CV-2575, 2014 WL 5641305, at *4 (M.D. Pa. Nov. 4, 2014). It is clear, therefore, that the court cannot compel the production of things that do not exist. Nor can the court compel the creation of evidence by parties who attest that they do not possess the materials sought by an adversary in litigation. See, e.g., AFSCME District Council 47 Health and Welfare Fund v. Ortho-McNeil-Janssen Pharmaceuticals, Inc., No. 08-5904, 2010 WL 5186088 (E.D. Pa. Dec. 21, 2010); Knauss v. Shannon, No. 08-1698, 2009 WL 975251 (M.D. Pa. April 9, 2009). See Lawson v. Love's Travel Stops & Country Stores, Inc., No. 1:17-CV-1266, 2019 WL 5622453, at *4 (M.D. Pa. Oct. 31, 2019).

These legal tenets serve as the guideposts for our resolution of this motion to compel.

**B.** **Request Nos. 2, 13, 15, 16, 17: Materials Related to Any Investigation into the Screening, Treatment, and/or Death of Everett Palmer, Jr.**

The defendant opposes the plaintiff's motion to compel materials related to their internal investigations into Everett Palmer's death while in custody, arguing the documents are not discoverable due to the "self-critical analysis" privilege. The defendants allege this privilege applies to the following requests by the plaintiff:

> 2. All documents and things relating to any investigation in any way related to the decedent, Everett Palmer, Jr.
> . . .
>
> 13. Any materials related to any investigation by Prime Care or its employees or contractors into the screening, treatment, and/or death of Everett Palmer, Jr.;
> . . .
>
> 15. Any and all documents related to internal or external investigations related to the provision of medical and/or mental health care to inmates during the time period of 2010 through present.
>
> 16. Any and all documents related to internal or external investigations related to in-custody deaths during the time period of 2010 through present.
>
> 17. Any and all documents related to internal or external investigations related to the treatment of individuals intoxicates by narcotics during the time period of 2010 through present.

(Doc. 122-1, at 1, 3). As to whether these requests are discoverable, their relevance to the litigation is not at issue;[1] instead, the defendants argue the materials are

---

[1] Although, as discussed below, the defendant does contend that requests 15, 16, and 17 are also overly broad and unduly burdensome.

cloaked in privilege under the "self-critical analysis" doctrine, which neither this Court nor this circuit has adopted.

We have had occasion to address the issue of whether to adopt the "self-critical analysis" privilege in the past and that discussion guides our analysis. At the outset, the defendants argue that Rule 501 provides that the common law may serve as a basis for a privilege in the light of reason and experience. On this score:

> Yet, while Rule 501 permits courts the latitude to recognize new privileges when facts and circumstances may warrant, the Third Circuit has admonished that "[t]he legislature, not the judiciary, is institutionally better equipped to perform the balancing of competing policy issues required in deciding whether the recognition of a ... privilege is in the best interests of society." In re Grand Jury, 103 F.3d 1140, 1154 (3d Cir.1997). Moreover, Rule 26 of the Federal Rules of Civil Procedure manifests a clear intention to limit Rule 501's flexibility "by favoring full disclosure of facts during discovery." Zoom Imaging, L.P., 513 F.Supp.2d at 413 (citing Wei v. Bodner, 127 F.R.D. 91, 95–96 (D.N.J.1989). As a result of this liberal policy favoring open discovery, the creation of new privileges is disfavored. Herbert v. Lando, 441 U.S. 153, 175 (1979); In re Grand Jury, 103 F.3d 1140, 1149 (3d Cir.1997); see also United States v. Nixon, 418 U.S. 618, 710 (1974) (observing that privileges "are not lightly created nor expansively construed, for they are in derogation of the search for truth."); In re Grand Jury, 103 F.3d at 1154 (courts should be "circumspect about creating new privileges based on perceived public policy considerations.").
>
> Consistent with the Supreme Court's hesitance to recognize new and expansive privileges that frustrate discovery, the Supreme Court itself has been reluctant to expand upon common-law privileges. See University of Pennsylvania v. EEOC, 493 U.S. 182, 189 (1990) (declining to create a common-law privilege to protect peer review materials from discovery in a Title VII case). This hesitance grows out of a recognition that privileges contravene the principle that "the public ... has a right to every man's evidence." United States v.

> Bryan, 339 U.S. 323, 331 (1950). When privileges are created or
> recognized, they must be narrowly construed and allowed "only to the
> very limited extent that permitting a refusal to testify or excluding
> relevant evidence has a public good transcending the normally
> predominant principle of utilizing all rational means for ascertaining
> truth." Trammel, 445 U.S. at 50 (quoting Elkins v. United States, 364
> U.S. 206, 234 (1960) (Frankfurter, J., dissenting).

Craig v. Rite Aid Corp., No. 4:08-CV-2317, 2010 WL 5463292, at *3–4 (M.D. Pa.

Dec. 29, 2010). We also acknowledged that the Third Circuit has explicitly declined

to recognize or apply the self-critical analysis privilege:

> In keeping with the foregoing principles that caution against the
> recognition of new and broadly framed privileges in civil litigation,
> courts within the Third Circuit have recently, with few exceptions,
> declined to recognize or apply a self-critical analysis privilege. See,
> e.g., Smith v. Life Investors Ins. Co. of America, No. 2:07–681, 2009
> U.S. Dist. LEXIS 96310, 2009 WL 3364933, at *8 (W.D.Pa. Oct. 16,
> 2009) ("the 'self critical analysis privilege' is not recognized by
> Pennsylvania or the Third Circuit and does not apply." citing Alaska
> Elec. Pension Fund v. Pharamacia, supra); Zoom Imaging, L.P., 513
> F.Supp.2d at 417 (declining to adopt a self-critical analysis privilege to
> prevent the discovery of confidential documents produced by an
> outside consultant for an organizational study of a competing provider's
> radiological practice); Davis v. Kraft Foods North America, No. 03–
> 6060, 2006 U.S. Dist. LEXIS 87140, 2006 WL 3486461, at *2 (E.D.Pa.
> Dec. 1, 2006) (refusing to recognize a self-critical analysis privilege
> where the defendant sought to withhold certain corporate documents,
> including a document that contained analysis and recommendations
> regarding the defendant's compensation efforts for minority and non-
> minority employees).

Id. at *4. Finally, as we noted, if this privilege has any application to civil litigation,

"it only applies narrowly and extends to mandatory reports and other materials that

are prepared at the direction of the government." Id. (citing Webb v. Westinghouse

Elec. Corp., 81 F.R.D. 431, 434 (E.D. Pa. 1978); Paladino v. Woodloch Pines, Inc., 188 F.R.D. 224, 226 (M.D. Pa. 1999); Frazier v. Se. Pa. Transp. Auth., No. 84–3004, 1988 U.S. Dist. LEXIS 12311, 1988 WL 117869 (E.D. Pa. Nov. 1, 1988)).

Thus, the law of this circuit remains what it has long been: "The self-critical analysis privilege has never been recognized by this Court and we see no reason to recognize it now." Alaska Elec. Pension Fund v. Pharmacia Corp., 554 F.3d 342, 351 (3d Cir. 2009). Against this rising tide of cases declining to adopt the self-critical analysis privilege, and considering our past disinclination to apply the privilege in similar circumstances, the defendants cannot avail themselves of this privilege in order to avoid providing these documents to the plaintiff. Therefore, the defendants' request to assert the self-critical analysis privilege is denied and the defendants shall respond to these discovery requests without reliance upon this particular privilege.

## C. Request Nos. 7-10: Documents and Data Regarding Inmate Psychological Referrals, Employment, Disciplinary, and Training Records, and Policies of York County Prison

Palmer also moves this Court to compel production of unredacted copies of documents provided in response to Requests Nos. 7-10. These requests sought the following:

> 7. Any and all documents or data reflecting the number of inmates at York County Prison referred to outside medical, psychological, or psychiatric services providers and the basis for the referral for the years 2010 – present.

9

8. The complete personnel file, education records, and certifications for the following individuals:
    a. David Zinn
    b. Catherine Steuffer
    c. Joanne Webster
    d. Dianna Knight
    e. Joshua Pauley
    f. Bryce Lefever

9. Any and all training logs or other documents reflecting training completed by each of the following individuals:
    a. David Zinn
    b. Catherine Steuffer
    c. Joanne Webster
    d. Dianna Knight
    e. Joshua Pauley
    f. Bryce Lefever

10. All documents relating to or reflecting the policy of the Prime Care Medical, Inc. on the following topics during the time period of 2010 through present:
    a. Training of employees
    b. Staffing levels in corrections facilities
    c. Staffing certification levels required in corrections facilities
    d. Assignment of mental health providers to corrections facilities
    e. Provision of mental health care
    f. Mental health evaluations
    g. Referral of patients to outside medical, psychology, and/or psychiatry providers
    h. Emergency transportation of patients to outside medical, psychology, and/or psychiatry providers
    i. Treatment of severely mentally disturbed or incapacitated individuals
    j. Treatment of individuals intoxicated by narcotics
    k. Intake screenings
    l. Suicide watch and suicide watch checks
    m. Routine health and/or mental health checks
    n. Recording observations from suicide and/or routine health/mental health checks

(Doc. 122-1, at 1-2).

The plaintiffs contend that, although the defendant produced responsive documents, they were so heavily redacted that they are "incomprehensible and useless." (Doc. 122, at 5). They argue that the defendant should be required to produce all documents without redactions, because, under Rule 34, they are not permitted to redact portions of discoverable documents that they independently deem irrelevant, but not privileged. The defendants have provided a discovery log documenting the reasons for the redactions, which are mostly due to the information being irrelevant to Palmer's case or containing sensitive contact or salary information of employees. (Doc. 127-1). The defendants have also offered to provide the requested unredacted materials for *in camera* review so that the Court may determine the relevance of the redacted information.

Prison officials doubtless have a legitimate interest in redacting irrelevant, but potentially sensitive, information from records produced in discovery. Likewise, litigants have a right to receive relevant evidence relating to their cases. When striking this balance between these competing interests courts have, in the past, reconciled the needs of civil rights litigants for information regarding facts developed by agency officials, with the Government's need to protect its deliberative processes, by conducting an *in camera* review of those records which may be relevant to narrowly tailored discovery demands. <u>Torres v. Harris</u>, No. 4:17-CV-

1977, 2019 WL 265804, at *5 (M.D. Pa. Jan. 18, 2019); <u>Paluch v. Dawson</u>, No. 06–175, 2008 WL 2785638, *3 (M.D. Pa. July 17, 2008).

This is the course we will follow in the instant case. In our view, although the defendants have not explicitly claimed the redacted information is privileged, the nature of the request, including the personnel files of several employees of the prison, supports the defendant's position that not all of the information contained in the documents would be relevant nor appropriately disclosed to the plaintiffs. However, the examples provided by the plaintiff show that several of these documents were redacted in their entirety, (Doc. 122-2, 122-3), making the provision of these documents essentially an empty gesture. Thus, the best course to balance the competing interests in this case would be for the Court to review these unredacted documents *in camera* and determine whether the redactions are appropriate.

### D. <u>Request Nos. 14-17: Communications or Documents Indicating a Failure to Evaluate/Provide Mental Health Care, Relating to In Custody Deaths, and Treatment of Individuals Intoxicated by Narcotics</u>

The defendant also objected to the scope of several of plaintiff's discovery requests. The plaintiff, in turn, requests that we compel the production of the information requested in Request No. 14: "All communications or documents reflecting concerns related to the provision of mental health care to inmates." (Doc. 122-1, at 3). The defendant objected to the original request as overbroad, and the plaintiffs contend that they further limited the request to "any/all communication

and/or documents indicating a failure to evaluate and/or provide mental health care from 2012 to present, and properly redact all responsive documents in compliance with HIPAA." (Doc. 122, at 6). The defendants also object to this amended request as overbroad and overly burdensome, indicating that a response to these requests would require a manual search of every inmate's medical chart from 2012 to present to determine the content of any sick call slips and grievance forms.

Thus, we are asked to consider whether the scope of this discovery request complies with the tenets of Rule 26(b), which provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Under Rule 26, we are expressly enjoined to consider whether the specific discovery sought is "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Thus, it has been said that the amended rule 'restores the proportionality factors to their original place in defining the scope of discovery.' " Fassett v. Sears Holdings Corp., 319 F.R.D.

143, 150 (M.D. Pa. 2017) (quoting <u>Wertz v. GEA Heat Exchangers Inc.</u>, No. 1:14-CV-1991, 2015 WL 8959408, at *2 (M.D. Pa. Dec. 16, 2015)).

As we undertake this proportionality analysis, there is no doubt that this case involves gravely important issues regarding the death of an inmate at York County Prison. We also agree with the plaintiff that information regarding other instances of the prison's alleged failure to evaluate and provide mental healthcare is directly relevant to her claim of a custom, policy, and practice of failing to provide proper mental health care that resulted in the custodial death of Everett Palmer. However, we also understand the viewpoint of the defendant that this request may be burdensome given the nature of the prison sick call and grievance systems. Further, although the plaintiff has already amended this request in an attempt to narrow its scope, there is still more that can be done on the plaintiff's end given the administrative challenges of providing such temporally and topically vast information. First, the plaintiffs could limit the temporal scope of the request, considering the incident occurred in April of 2018 and they have requested these records reaching as far back as 2012. Further, the plaintiff could narrow the topical scope of the request by limiting it to only communications and documents indicating a failure to evaluate and/or provide mental health care during the intake process, as Mr. Palmer's death occurred within two days of his arrival at York County Prison.

14

Recognizing that there are ways to more narrowly define the scope of the request, we decline to compel the defendants to produce the information as requested by the plaintiff spanning a six-year period. Instead, we will narrow the temporal scope of this request from six years to the three years preceding Mr. Palmer's death. By following this course, we will halve the burden upon the defendants while compelling the production of the most timely and relevant that information may exist in these files.

The plaintiffs also seek an order compelling further responses to Request Nos. 15-17 and specifically ask that we compel the defendants to produce documents related to internal or external investigations related to the provision of medical and/or mental health care to inmates during the time period 2010 through present, the provision of medical and/or mental health care to inmates from 2010 to present, in custody deaths during the same period, and the treatment of individuals intoxicated by narcotics during the same time period. This evidence is also doubtless potentially relevant to the plaintiff's claims particularly as they relate to the institutional defendants, but mindful of the burden that a manual inspection of eight years of records might entail, we will also initially limit the scope of these requests to the three years preceding Mr. Palmer's death.

Finally, we note that the parties have in their pleadings raised some issues regarding the topical scope of these requests, with the plaintiff seeking records of

investigations undertaken during this time frame, and the defendants requesting a further definition of what constitutes an investigation. In the first instance, we believe that the parties should work cooperatively in endeavoring to reach an agreement of these topical aspects of the outstanding discovery requests. If they cannot reach an accord on these matters, they should notify us and we will assist them in this regard.

**E.** **Request Nos. 2, 13: Healthcare Records in Original Source Format**

Finally, as we understand it, the plaintiff requests that certain health care records be produced in their native or original source format. Such requests are an increasingly familiar aspect of discovery in this modern information technology era. "The native file format is the 'file structure defined by the original creating application,' such as a document created and opened in a word processing application." Race Tires Am., Inc. v. Hoosier Racing Tire Corp., 674 F.3d 158, 161 n. 2 (3d Cir. 2012). Requests like the instant request for production of documents in their native, original source format often facilitate discovery in that the "production in 'native format will provide [a party] with the metadata necessary to identify the provenance of each document and put it into its proper context.' " Lawson, No. 1:17-CV-1266, 2019 WL 5622453, at *6 (quoting City of Colton v. Am. Promotional Events, Inc., 277 F.R.D. 578, 586 (C.D. Cal. 2011). With respect to the format of discovery production, and requests for production in native format, as a general rule:

16

> When the requesting party specifies the form of production, the
> responding party must either produce the documents in the form
> specified or object. <u>Romero v. Allstate Ins. Co.</u>, 271 F.R.D. 96, 107
> (E.D.Pa.2010). The burden "rests with the party objecting to
> the production of metadata or ESI to show undue hardship or
> expense." <u>Susquehanna Commercial Fin., Inc. v. Vascular Res.,
> Inc.</u>, 2010 WL 4973317, at * 13 (M.D.Pa. Dec.1, 2010) (citations
> omitted).

<u>Peterson v. Matlock</u>, No. CIV.A. 11-2594 FLW D, 2014 WL 5475236, at *1 (D.N.J.

Oct. 29, 2014).

In the instant case, the defendants have lodged a twofold objection to this

request, noting first that some of the materials in their possession are copies or

records that do not contain metadata and cannot be produced in a native format.

Beyond this threshold objection, the defendants also object to being required to

produce any documents in a native or original source format, arguing without further

supporting detail that: "Plaintiff's request for 'original source' information seeks

information that is not relevant to the issues in this case or Everett Palmer, Jr. and is

not likely to lead to discoverable information. production of records in this format."

(Doc. 127, at 14).

Upon consideration, the plaintiff's motion to compel production of records in

their native or original source format will be granted in part and denied in part. At

the outset, consistent with the concept that the court cannot compel the production

of things that do not exist, the defendants are excused from producing in native

format documents in their possession which do not contain metadata. However, to

17

the extent that records exist in a native or original source format, we recognize that production in native format will provide the metadata necessary to identify the provenance of each document and put it into its proper context. We are also mindful that the plaintiff is entitled to specify the manner of production and the burden rests with the defense to show that a native format production would be unduly onerous. In this case, the defendants' general relevance objection does not, in our view, carry this burden of proof and persuasion. Therefore, to the extent that materials exist in a native or original source format, they will be produced in the format requested by the plaintiff.

An appropriate order follows.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: September 26, 2022

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROSE PALMER, ADMINISTRATRIX** | : | |
| **OF THE ESTATE OF EVERETT** | : | |
| **PALMER, JR., DECEASED,** | : | **Civil No. 1:20-CV-539** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **YORK COUNTY, PENNSYLVANIA** | : | |
| ***et al.*,** | : | |
| | : | |
| **Defendants.** | : | |

## ORDER

AND NOW, this 26th day of September 2022, in accordance with the accompanying Memorandum,  IT IS ORDERED that the plaintiff's motion to compel is GRANTED, in part, and DENIED, in part as follows:

1. The defendants' request to assert the self-critical analysis privilege to avoid production of documents is DENIED and the defendants shall respond to these discovery requests without reliance upon this particular privilege.

2. Request Nos. 14-17 which seek Communications or Documents Indicating a Failure to Evaluate/Provide Mental Health Care, Relating to In Custody Deaths, and Treatment of Individuals Intoxicated by Narcotics, are GRANTED in part and DENIED in part, in that we will narrow the temporal scope of this request from six years to the three years preceding Mr. Palmer's death, and the parties are directed to work cooperatively in endeavoring to reach an agreement of these topical aspects of the outstanding discovery requests.

3. With respect to the plaintiff's objections to redactions in the records produced to date, the defendants shall provide the documents in their redacted and unredacted form to the court for our *in camera* review on or before **October 17, 2022**, along with a log identifying the basis for the redactions.

4. The plaintiff's request for production of documents in native, original source format, is GRANTED in part and DENIED in part as follows: defendants are excused from producing in native format documents in their possession that do not contain metadata. However, to the extent that materials exist in a native or original source format, they will be produced in the format requested by the plaintiff.

*/s/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge